Filed 8/9/16

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| RANCHO MIRAGE COUNTRY CLUB HOMEOWNERS ASSOCIATION, <br><br>    Plaintiff and Respondent, <br><br> v. <br><br> THOMAS B. HAZELBAKER, Individually and as Co-Trustee, etc. et al., <br><br>    Defendants and Appellants. | E063272 <br><br> (Super.Ct.No. PSC1300860) <br><br> OPINION |

APPEAL from the Superior Court of Riverside County.  John G. Evans, Judge.

Affirmed.

Matthew T. Ward for Defendants and Appellants.

Epsten Grinnell & Howell and Anne L. Rauch for Plaintiff and Respondent.

Defendants and appellants Thomas B. Hazelbaker and Lynn G. Hazelbaker own,

through their family trust, a condominium in the Rancho Mirage Country Club

development.  Defendants made improvements to an exterior patio, which plaintiff and

respondent Rancho Mirage Country Club Homeowners Association (Association)

contended were in violation of the applicable covenants, conditions and restrictions

1

(CC&Rs). The parties mediated the dispute pursuant to the Davis-Stirling Common Interest Development Act (Davis-Stirling Act or the Act), codified at sections 4000-6150 of the Civil Code[1] (formerly sections 1350-1376). The mediation resulted in a written agreement. Subsequently, the Association filed the present lawsuit, alleging that defendants had failed to comply with their obligations under the mediation agreement to modify the property in certain ways.

While the lawsuit was pending, defendants made modifications to the patio to the satisfaction of the Association. Nevertheless, the parties could not reach agreement regarding attorney fees, which the Association asserted it was entitled to receive as the prevailing party.

The Association filed a motion for attorney fees and costs, seeking an award of $31,970 in attorney fees and $572 in costs. The trial court granted the motion in part, awarding the Association $18,991 in attorney fees and $572 in costs. Defendants argue on appeal that the trial court's award, as well as its subsequent denial of a motion to reconsider the issue, are erroneous in various respects.[2]

For the reasons discussed below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In November 2011, defendants applied for and received approval from the Association's architectural committee to make certain improvements to the patio area of

---

[1] Further undesignated statutory references are to the Civil Code.

[2] The Association did not file a cross appeal challenging the trial court's award of less than the full amount requested.

their property.  Subsequently, however, the Association contended that defendants had made changes that exceeded the scope of the approval, and which would not have been approved had they been included in defendants' November 2011 application.

On June 19, 2012, the Association sent defendants a request for alternative dispute resolution pursuant to former section 1369.510 et seq., identifying the disputed improvements and proposing that the parties mediate the issue.  Defendants accepted the proposal, and a mediation was held on April 8, 2013.  A "Memorandum of Agreement in Mediation" dated April 9, 2013, was reached, signed by two representatives of the Association, its counsel, and Thomas Hazelbaker (but not Lynn Hazelbaker).  The agreement called for defendants to make certain modifications to the patio, in accordance with a plan newly approved by the Association; specifically, to install three openings, each 36 inches wide and 18 inches high, in a side wall of the patio referred to as a "television partition" in the agreement, and to use a specific color and fabric for the exterior side of drapery.  The agreement provided for the modifications to be completed within 60 days from the date of the agreement.  It also provided for a special assessment on defendants' property to pay a portion of the Association's attorney fees incurred to that point, and included a prevailing party attorney fees clause with respect to any subsequent legal action "pertaining to the enforcement of or arising out of" the agreement.

The modifications described in the mediation agreement were not completed within 60 days.  The parties each blame the other for that circumstance.

3

On September 4, 2013, the Association filed the present lawsuit, asserting two causes of action: (1) for specific performance of the mediation agreement, and (2) for declaratory relief. Subsequently, the parties reached agreement regarding modifications to the property, slightly different from those agreed to in mediation; instead of three 36-inch-wide openings, two openings of 21 inches, separated by a third opening 52 inches wide, were installed in the wall, and a different fabric than the one specified in the mediation agreement was used for the drapery. The modifications were completed by defendants in September 2014. The parties could not reach a complete settlement, however, because they continued to disagree about who should bear the costs of the litigation.

On October 15, 2014, the Association filed a motion seeking attorney fees and costs pursuant to section 5975, subdivision (c). The motion sought $31,970 in attorney fees, plus $572 in costs. On October 30, 2014, the hearing of the matter, initially set for November 10, 2014, was continued to November 25, 2014, on the court's own motion. Defendants filed their opposition to the motion on November 14, 2014.

At the November 25, 2014 hearing on the motion, the trial court noted that defendants' "paperwork was not timely and the Court did not consider it."[3] The court further observed that the bills submitted by the Association in support of its motion were heavily redacted, sometimes to the point where it could not "tell what's going on." The

_____

[3] Defendants concede that their opposition to the motion for attorney fees was filed late, only seven court days before the hearing. (See Code Civ. Proc., § 1005, subd. (b) [opposition papers due nine court days before hearing].)

4

court declined to review unredacted bills in camera, and further remarked that "if I can't tell what's going on, I'm not awarding those fees." At the conclusion of the hearing, the court took the matter under submission.

On December 2, 2014, the trial court issued a minute order granting the Association's motion, but awarding less than the requested amount; $18,991 in attorney fees, plus $572 in costs. The trial court denied the Association's motion with respect to fees incurred prior to the mediation, awarding $3,888.50 in "[p]ost mediation fees" incurred by one law firm on behalf of the Association "starting 60 days post mediation," and $15,102.50 in "litigation fees" incurred by another law firm. With respect to the "[p]ost mediation fees," the court commented as follows: "The court had great difficulty determining the nature of the billings because so much information was redacted from the billings. All doubts were resolved in favor of the homeowner."

Judgment was entered in favor of the Association on December 17, 2014, and on January 14, 2015, a notice of entry of judgment was filed. On January 21, 2015, defendants filed a motion for reconsideration of the trial court's order regarding fees and costs. On February 27, 2015, after a hearing, the trial court denied the motion as untimely, further noting that the motion "did not set forth any new facts, law, or a chance in circumstances."

5

## II.  DISCUSSION

**A.  The Association's Lawsuit Is an "Action to Enforce the Governing Documents" Under the Davis-Stirling Act.**

This case presents the question of whether the Davis-Stirling Act, and particularly the fee-shifting provision of section 5975, subdivision (c), applies to an action to enforce a settlement agreement arising out of a mediation conducted pursuant to the mandatory alternative dispute resolution requirements of the Act.  We conclude that it does apply in at least some circumstances, and more specifically that it applies on the facts of this case.

"The Davis-Stirling Act, enacted in 1985 [citation], consolidated the statutory law governing condominiums and other common interest developments."  (*Villa De Las Palmas Homeowners Assn. v. Terifaj* (2004) 33 Cal.4th 73, 81 (*Villa De Las Palmas*).) "The Davis-Stirling Act includes provisions addressing alternative dispute resolution (ADR), including the initiation of such nonjudicial procedures, the timeline for completing ADR, and the relationship between ADR and any subsequent litigation." (*Grossman v. Park Fort Washington Assn.* (2012) 212 Cal.App.4th 1128, 1132 (*Grossman*).)  Among other things, the legislation provides that "[a]n association or a member may not file an enforcement action in the superior court unless the parties have endeavored to submit their dispute to alternative dispute resolution pursuant to this article." (§ 5930, subd. (a).)

The Act also includes the following mandatory attorney fees provision:  "In an action to enforce the governing documents, the prevailing party shall be awarded reasonable attorney's fees and costs." (§ 5975, subd. (c).)  This language has been

6

interpreted to allow recovery of not only litigation costs, but also reasonable attorney fees and costs expended in pre-litigation ADR pursuant to the Davis-Stirling Act. (*Grossman*, *supra*, 212 Cal.App.4th at p. 1134 [interpreting former section 1354, later renumbered as § 5975 without substantive change].)

In *Grossman*, although the parties participated in a mediation prior to the litigation, there is no indication that the mediation produced any sort of agreement, and the complaint was explicitly framed as an action to enforce a specific provision of the CC&Rs at issue. (*Grossman*, *supra*, 212 Cal.App.4th at pp. 1131, 1133.) In contrast, the mediation between the parties in this case did produce an agreement, and the complaint was framed as an action to enforce that agreement. *Grossman* therefore does not directly address whether the Association's claim for attorney fees and costs is properly treated as falling within the scope of the Davis-Stirling Act. *Grossman* in essence interprets the term "action" in section 5975 to encompass both the mandatory pre-litigation ADR efforts and any subsequent litigation "to enforce the governing documents." (*Grossman*, *supra*, at p. 1134; § 5975.) But is a lawsuit to enforce an agreement that was reached during mediation (or another form of ADR) an action "to enforce the governing documents," in the meaning of section 5975, where the mediation was initiated pursuant to the Davis-Stirling Act? In our view, that question must be answered in the affirmative, at least in circumstances similar to those of this case, for the reasons discussed below.

We must construe the words of a statute in context and with reference to the entire scheme of law of which they are a part. (*State Farm Mutual Automobile Ins. Co. v. Garamendi* (2004) 32 Cal.4th 1029, 1043.) The Davis-Stirling Act is intended, among

7

other things, to encourage parties to resolve their disputes without resort to litigation, by effectively mandating pre-litigation ADR. (See § 5930, subd. (a) [enforcement action in civil court may not be filed until parties have "endeavored to submit their dispute" to ADR; § 5960 [in determining amount of fee and cost award, court "may consider whether a party's refusal to participate in [ADR] before commencement of the action was reasonable"].) Narrowly construing the phrase "action to enforce the governing documents" to exclude actions to enforce agreements arising out of that mandatory ADR process would discourage such resolutions, and encourage gamesmanship. For example, a party might agree to a settlement in mediation without any intention of fulfilling its settlement obligations, but simply to escape the cost-shifting provisions of the Davis-Stirling Act.[4] It is unlikely, therefore, that a narrow construction is preferable.

Moreover, the gravamen of the Association's complaint is that defendants have not taken certain steps to bring their property into compliance with the applicable CC&Rs. The relief sought by the complaint is an order requiring defendants to take those steps, and a declaration of the parties' respective rights and responsibilities. The circumstance that the steps to bring the property into compliance with CC&Rs were specified a mediation agreement does not change the underlying nature of the dispute between the parties, or the nature of the relief sought by the Association. Indeed, the parties' agreement was the product of a mediation conducted explicitly pursuant to the ADR requirements of the Davis-Stirling Act. We see nothing in the Davis-Stirling Act

---

[4] We here speak in hypotheticals; we do not suggest a finding that defendants have engaged in such gamesmanship.

8

that suggests we should give more weight to the form of a complaint—its framing as an action to enforce a mediation agreement—than to the substance of the claims asserted and relief sought, in determining whether an action is one "to enforce the governing documents" in the meaning of section 5975.

We hold, therefore, that the present case is an "action to enforce the governing documents," in the meaning of section 5975.[5]  As such, the trial court properly considered the Davis-Stirling Act as the basis for any recovery, as the Association requested in its motion for attorney fees and costs.  (*Parrott v. Mooring Townhomes Assn., Inc.* (2003) 112 Cal.App.4th 873, 879-880 [because party sought recovery pursuant to fee-shifting statute, standards for contractual fee-shifting clauses inapplicable].)

**B.  The Trial Court Did Not Abuse Its Discretion by Determining the Association to Be the Prevailing Party.**

Defendants contend the trial court erred by determining the Association to be the prevailing party.  We find no abuse of discretion.

The analysis of who is a prevailing party under the fee-shifting provisions of the Act focuses on who prevailed "on a practical level" by achieving its main litigation

---

[5]  It bears mention that our conclusion here may not apply to every action to enforce a settlement agreement arising out of ADR conducted pursuant to the Davis-Stirling Act.  Consider the situation of a dispute arising regarding the application of CC&Rs, resolved at mediation by an agreement for one party to buy the other party's property, with payments to be made on a specified schedule.  Suppose the payments are not made on time, and a lawsuit to enforce the settlement is brought.  It would be difficult to characterize such an action as one to "enforce the governing documents," at least in the same sense as the action at issue in this appeal.  But we may leave for another day the question of whether a dispute like our hypothetical would nevertheless fall within the scope of section 5975.

9

objectives; the limitations applicable to contractual fee-shifting clauses, codified at section 1717, do not apply.[6] (*Heather Farms Homeowners Assn. v. Robinson* (1994) 21 Cal.App.4th 1568, 1574.) We review the trial court's determination for abuse of discretion. (*Villa De Las Palmas*, *supra*, 33 Cal.4th at p. 94.) "'"The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court."'" (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1339 (*Goodman*).)

The trial court's determination that the Association prevailed on a practical level is not beyond the bounds of reason. The Association wanted defendants to make alterations to their property to bring it in compliance with the applicable CC&Rs, specifically, by installing openings in the side wall of the patio, and altering the drapery on the patio. The Association achieved that goal, with defendants completing the modifications to the patio in September 2014.

Defendants focus on the circumstance that the modifications that were ultimately made to the property differed in some details from those contemplated by the mediation agreement. This argument, however, frames the issue improperly. The "action" at issue in the section 5975 analysis includes not only the litigation in the trial court, but also the

---

[6] Section 1717 provides that when an action on a contract "has been voluntarily dismissed or dismissed pursuant to a settlement of the case, there shall be no prevailing party" for the purpose of an award of attorney fees pursuant to a contractual prevailing party clause. (§ 1717, subd. (b)(2).) Because section 1717 is inapplicable to this case, we need not and do not discuss in detail defendants' arguments that rest on application of that section.

pre-litigation ADR process.  (*Grossman*, *supra*, 212 Cal.App.4th at p. 1134.)  The objective of the Association's enforcement action, including the pre-litigation ADR process, is reasonably characterized broadly, as seeking to force defendants to bring their property into compliance with the CC&Rs.  It was successful in achieving that goal.

Moreover, the differences between the terms of the mediation agreement and the actual modifications that defendants made, and which the Association accepted, are reasonably viewed as de minimis.  The openings installed in the patio wall were of different dimensions than were contemplated in the mediation agreement, but nevertheless openings were installed, to the satisfaction of the Association; different fabric was used, but nevertheless the exterior color of the drapery was brought into conformity with the rest of the development.  And defendants concede (indeed, insist) that the changes between the terms of the mediation agreement and the final modifications to the property were motivated by physical necessity—the dimensions of the existing wall and its supporting beams, the unavailability of the specified fabric for drapery.  Defendants cannot point to any success in any aspect of the litigation itself; prior to the motion for attorney fees at issue, the only significant events in the litigation were the filing of the complaint and the answer.  The trial court therefore did not exceed the bounds of reason in determining the Association achieved its main litigation objectives as a practical matter.

Defendants argue that the trial court abused its discretion by refusing to consider their late-filed opposition papers and supporting evidence, and that consideration of that evidence "undoubtedly would have mitigated in favor of [defendants] and necessarily a

11

different ruling as to the prevailing party determination." This argument fails in several respects. First, a trial court has broad discretion to accept or reject late-filed papers. (Cal. Rules of Court, rule 3.1300(d).) Defendants made no attempt to seek leave to file their opposition late, and made no attempt to demonstrate good cause for having failed to adhere to the applicable deadline. The circumstance that they were, at the time, appearing in propria persona, does not establish good cause. (See *Nelson v. Gaunt* (1981) 125 Cal.App.3d 623, 638-639 ["When a litigant is appearing in propria persona, he is entitled to the same, but no greater, consideration than other litigants and attorneys [citations]. Further, the in propria persona litigant is held to the same restrictive rules of procedure as an attorney [citation]." (Fn. omitted.).) The trial court acted well within its discretion when it declined to consider defendants' opposition papers.[7]

Second, defendants are incorrect that consideration of their opposition would likely have made any difference in the trial court's determination of the prevailing party. Defendants sought to introduce evidence that the terms of the mediation agreement could not be precisely implemented, and evidence of the Association's "delay and unwillingness to address ambiguities in the agreement." Even accepting these points as true, however (and they are disputed at least in part by the Association), they would not likely have altered the trial court's analysis of which party prevailed in the action. The fact remains, as discussed above, the Association contended defendants had altered their

---

[7] Defendants' arguments to the contrary rely heavily on case law from the summary judgment context. This reliance is out of place. Even if a motion for attorney fees is the last issue remaining in a case, it is not, as defendants put it, a "case dispositive motion" in the same sense that a motion for summary judgment is.

12

property in a manner that was inconsistent with the applicable CC&Rs, and sought successfully to force defendants to make modifications to bring the property into compliance. Because the Association achieved that main litigation objective, it was properly considered to have prevailed in the action as a practical matter, even though the only judgment resulting from the case related to the award of fees and costs, not the merits of the complaint.[8]

In short, the trial court reasonably found the Association to be a prevailing party, for purposes of making an award of attorney fees and costs under the Davis-Stirling Act.

**C. The Trial Court Did Not Abuse Its Discretion in Determining the Amount of Fees and Costs to Award.**

Defendants argue that the trial court abused its discretion in determining its award of fees and costs in several different respects. We find no abuse of discretion.

Once the trial court determined the Association to be the prevailing party in the action, it had no discretion to deny attorney fees. (§ 5975; *Salehi v. Surfside III Condominium Owners Assn.* (2011) 200 Cal.App.4th 1146, 1152 [language of § 5975 reflects legislative intent to award attorney fees as a matter of right when statutory criteria are satisfied].) The magnitude of what constitutes a reasonable award of attorney fees is, however, a matter committed to the discretion of the trial court. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095-1096.) As noted above, in reviewing for abuse of

---

[8] Like the trial court, we need not address the Association's contention that defendants not only filed their opposition late, but also never properly served the documents and supporting evidence on the Association.

13

discretion, we examine whether the trial court exceeded the bounds of reason. (*Goodman, supra*, 47 Cal.4th at p. 1339.)  In so doing, we presume the "trial court impliedly found 'every fact necessary to support its order.'"  (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115-1116, fn. 6, citing *Murray v. Superior Court* (1955) 44 Cal.2d 611, 619.)

Here, the trial court explicitly took into account the circumstance that the Association had already recovered a portion of its attorney fees pursuant to the agreement of the parties, and awarded fees only for fees incurred starting 60 days after the mediation, when the agreed upon modifications should have been completed.  The court also excluded any award with respect to billings that did not provide sufficient "information" for it to "tell what's going on."  The amount actually awarded was substantially less than the total amount requested, and defendants have not pointed to anything suggesting the amount is unreasonable on its face, given the circumstances of the case.  We therefore find no manifest abuse of discretion in the court's award.

Defendants argue that the trial court did not have enough information to support its findings, pointing to the trial court's comments about heavy redaction of the billing records.  The trial court specified, however, that it awarded no fees with respect to billing items it considered to be excessively redacted, and that it resolved any doubts about the appropriateness of billing entries in favor of defendants.  Moreover, unlike some other jurisdictions, California law does not require detailed billing records to support a fee award; "[a]n attorney's testimony as to the number of hours worked is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records."

(*Steiny & Co. v. California Electric Supply Co.* (2000) 79 Cal.App.4th 285, 293.)

Furthermore, "[a]n award for attorney fees may be made in some instances solely on the basis of the experience and knowledge of the trial judge without the need to consider any evidence. (*Fed-Mart Corp. v. Pell Enterprises, Inc.* (1980) 111 Cal.App.3d 215, 227.) Defendants' arguments about the sufficiency of the documentation submitted by the Association in support of its request for attorney fees are without merit.[9]

Defendants also suggest that the trial court erred by not articulating in more detail its findings with respect to how it arrived at the number that it did for an award of attorney fees and costs. It is well settled, however, that the trial court was not required to issue any explanation of its decision with regard to the fee award. (*Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 101 (*Gorman*) ["We adhere to our earlier conclusion that there is no general rule requiring trial courts to explain their decisions on motions seeking attorney fees."].) To be sure, appellate review may well be "hindered" by the lack of any such explanation. (*Martino v. Denevi* (1986) 182 Cal.App.3d 553, 560.) Without explanation, an award may appear arbitrary, requiring remand if the appellate court is unable to discern from the record any reasonable basis for the trial

---

**9** Moreover, defendants never objected to the adequacy of the documentation submitted by the Association in support of its motion for attorney fees, either at the hearing on the motion, or in their late-filed opposition papers. The court raised the issue of excessive redactions on its own motion, not at the prompting of defendants. As such, even if defendants' challenge to the adequacy of the evidentiary basis for the trial court's award of fees had merit, it would have been forfeited. (See *Robinson v. Grossman* (1997) 57 Cal.App.4th 634, 648 [party that failed to object to the trial court that the opposing party's attorney fees were not sufficiently documented waived the right to object on appeal to the amount of the fee award].)

15

court's decision. (E.g. *Gorman*, *supra*, at p. 101 ["It is not the absence of an explanation by the trial court that calls the award in this case into question, but its inability to be explained by anyone, either the parties or this appellate court."]) Here, the trial court's reasoning is not so inscrutable, as discussed above.

## D. Judgment Was Properly Entered Against Both Defendants.

Defendants argue that judgment was not properly entered against Lynn Hazelbaker, because she was not a signatory to the mediation agreement. This argument was not raised in the trial court, however, and "[a]s a general rule, 'issues not raised in the trial court cannot be raised for the first time on appeal.'" (*Sea & Sage Audubon Society, Inc. v. Planning Com.* (1983) 34 Cal.3d 412, 417.) Moreover, the argument is without merit. It depends on the characterization of the action as no more than an action on a contract, rather than an action to enforce the CC&Rs, which we rejected above. Moreover, Lynn Hazelbaker was jointly represented by the same attorneys as Thomas Hazelbaker during the periods of the case when they have been represented by counsel, and joined with him in every filing, both in the trial court and in this court.[10] An award of attorney fees to the Association against both Thomas and Lynn Hazelbaker is appropriate.

---

[10] For example, defendants' opposition to the Association's motion for attorney fees and costs is entitled "Declaration of Thomas B. Hazelbaker in Opposition to Plaintiff[']s Motion for Attorneys' Fees and Costs," but the heading indicates the document was filed on behalf of both Thomas B. Hazelbaker and Lynn G. Hazelbaker, as "Defendants, In Pro Per," and Lynn Hazelbaker filed no separate opposition to the motion.

16

**E. The Trial Court Did Not Err By Denying Defendants' Motion for Reconsideration.**

Defendants argue that the trial court erred by denying their motion for reconsideration as untimely. They are incorrect. Judgment was entered on December 17, 2014, while defendants' motion was filed on January 21, 2015. "A trial court may not rule on a motion for reconsideration after entry of judgment." (*Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 187, 192.)

Defendants further contend that the trial court should have treated their untimely motion for reconsideration as a timely motion for new trial, and granted it. However, defendants' asserted bases for demanding a "new trial"—really, a new hearing on the issue of attorney fees, since no trial, or any other disposition on the merits of the complaint, ever occurred—are all contentions we have discussed above, and rejected. Defendants' January 21, 2015 motion was properly denied on the merits, even if it could be construed as timely filed.

**F. The Association Is Entitled to Appellate Attorney Fees.**

The Association correctly asserts that if it prevails in this appeal it is entitled to recover its appellate attorney fees. "A statute authorizing an attorney fee award at the trial court level includes appellate attorney fees unless the statute specifically provides otherwise." (*Evans v. Unkow* (1995) 38 Cal.App.4th 1490, 1499.) Neither section 5975, nor any other provision of the Davis-Stirling Act, precludes recovery of appellate attorney fees by a prevailing party; hence they are recoverable.

17

## III. DISPOSITION

The judgment is affirmed. The Association is awarded its costs and attorney fees on appeal, the amount of which shall be determined by the trial court.

CERTIFIED FOR PUBLICATION

                                                  HOLLENHORST

                                                            J.

We concur:


RAMIREZ

                      P. J.

MILLER

                      J.