BAKER, J., Concurring in Part and Dissenting in Part
Business and Professions Code section 7028 provides that a victim who uses the services of a person *660 convicted of operating as an unlicensed contractor "is eligible, pursuant to *532 subdivision (f) of Section 1202.4 of the Penal Code, for restitution for economic losses , regardless of whether he or she had knowledge that the person was unlicensed." ( Bus. & Prof. Code, § 7028, subd. (h), emphasis added.) Another provision of the Business and Professions Code, section 7031, states that "a person who utilizes the services of an unlicensed contractor may bring an action in any court of competent jurisdiction in this state to recover all compensation paid to the unlicensed contractor for performance of any act or contract." ( Bus. & Prof. Code, § 7031, subd. (b), emphasis added.) Defendant Michael Walker (defendant) sustained a conviction for acting in the capacity of a contractor without a license, and the People attempted to recover the full amount his victim, Sharon Curto (Curto), paid him as restitution under Business and Professions Code section 7028 -Curto did not then bring a separate civil action as authorized by Business and Professions Code section 7031. For reasons I will explain, I believe the issue of whether the trial court's restitution award was proper turns less on a question of statutory interpretation and more on the question of whether the trial court's restitution calculation was an abuse of its discretion.
Although the Legislature's statutory scheme invites needless civil litigation, I agree with the majority that Business and Professions Code section 7031 cannot be used to interpret the applicable criminal restitution statutes so as to require an unlicensed contractor to make restitution in the amount of all payments the contractor received.[1] But concluding Business and Professions Code section 7031 is not a reliable interpretive guide still leaves another question-I submit, the key question-unresolved: what is the "loss" that is appropriately compensable by restitution?
Defendant argues the issue by repeatedly treating Business and Professions Code section 7028, and the cross-referenced provision of the Penal Code, as if they authorize restitution for only "actual losses." Of course, that disregards the term the statutes actually use: "economic loss(es)." ( Bus. & Prof. Code, § 7028, subd. (h) ; Pen. Code, § 1202.4, subd. (f).) The distinction is important. A reference to actual loss would more strongly suggest that, in an unlicensed contracting case, the pertinent "loss" should be calculated as the *661 difference between the quality and value of work performed by an unlicensed contractor as compared to the quality and value of the work if it were done by a contractor with a license.[2] The references to economic loss that appear in the statute, however, are best read as a qualifier to distinguish monetary or financial losses (which are compensable) from compensation for psychological or other noneconomic harm *533 (which, with exceptions, are not). (Compare, e.g., Pen. Code, § 1202.4, subd. (f) ["[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court"] with Pen. Code, § 1202.4, subd. (f)(3)(F) [for felony violations of Penal Code section 288, a court should order restitution for "[n]oneconomic losses, including, but not limited to, psychological harm"].)[3]
By using the malleable term "economic loss," I believe the statutes give trial courts significant discretion to determine what in fact constitutes the "loss" in an unlicensed contractor case. ( People v. Giordano (2007) 42 Cal.4th 644, 663, 68 Cal.Rptr.3d 51, 170 P.3d 623 [trial courts have broad discretion to choose a method for calculating the amount of restitution].) On a strong enough record, likely necessitating expert testimony, I believe a trial court could order restitution of nearly all (or perhaps even all) payments made to a convicted unlicensed contractor without transgressing the limits of that discretion. We have no such record in this case, and that is partly why I conclude the result reached by the appellate division cannot stand. Having said that, I am nevertheless of the view that the manner in which the trial court calculated the restitution award here was an abuse of the court's discretion.
The trial court's restitution award was partly founded on the price of the contract victim Curto entered into with defendant. Specifically, the court took the remaining balance Curto had not paid on that contract ($7,851) and subtracted that amount from the court's estimate of what it would cost to fix the house renovation defects attributable to defendant's work ($9,150). The court ruled the resulting figure ($1,299) would be the restitution award.
*662 The problem, of course, is the decision to use the contract price in calculating the restitution owed. At the time Curto agreed to the contract, she believed (based on defendant's misrepresentations) that he was a licensed contractor. Had she known before entering into the contract that defendant in fact had no license, there is no reason to believe she would have agreed to pay such a high amount. Indeed, there is good reason to conclude otherwise: in addition to plain common sense, which tells us, for instance, that a buyer will pay less for a chair built by IKEA than one built by Charles and Ray Eames, Curto's testimony during the restitution hearing indicated she relied on the belief that defendant was licensed in selecting him for the renovation job. By treating the license-based contract price as a given, rather than reducing it to account for defendant's subsequently discovered unlicensed status, the trial court gave defendant a windfall-and failed to make Curto fully whole. I would accordingly remand the matter to the trial court to recalculate the restitution award consistent with the views I have expressed.[4]

I do concede, though, that there are elements in the legislative history of Business and Professions Code section 7028, subdivision (h) that can be read to point to a contrary conclusion. The Enrolled Bill Report cited by the majority, for instance, states: "This bill ... defines people who use unlicensed contractors, knowingly or not, as victims in order to allow these people to receive restitution for their losses through the criminal courts rather than having to spend their own time and money to file their own case in the civil courts against the unlicensed contractor." (Dept. of Consumer Affairs, Enrolled Bill Rep. on Assem. Bill No. 370 (2009-2010 Reg. Sess.) June 29, 2009, p. 1.) The same report also states: "This bill would also make gaining restitution from an unlicensed contractor in criminal courts more consistent with existing law regarding restitution in civil courts." (Id. at p. 4.)

I do not believe this is a case of "stolen or damaged property," which would trigger the Penal Code section 1202.4 provision that limits restitution to "the replacement cost of like property, or the actual cost of repairing the property when repair is possible." (Pen. Code, § 1202.4, subd. (f)(3)(A).)

I leave for another day the task of unraveling how Penal Code section 1202.4 can authorize restitution for "every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to ... [¶] ... [¶] Noneconomic losses...." (Pen. Code, § 1202.4, subd. (f)(3).)

I agree with the majority that the appellate division did not err in ordering Curto's attorney fees to be included as part of the restitution award. (See Rancho Mirage Country Club Homeowners Assn. v. Hazelbaker (2016) 2 Cal.App.5th 252, 263-264, 206 Cal.Rptr.3d 233.)