Filed 7/20/21  Winchester Community Assn. v. Perrotta CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| WINCHESTER COMMUNITY ASSOCIATION, | C085295 |
| Plaintiff, Cross-defendant and Respondent, | (Super. Ct. No. SCV0029936) |
| v. | |
| CHARLES FRANK PERROTTA et al., | |
| Defendants, Cross-complainants and Appellants. | |

A dispute between the appellants, husband and wife Charles Frank Perrotta and Charlotte Van Warmerdam Perrotta (collectively the Perrottas), and respondent Winchester Community Association (Association) over the landscaping of appellants' home that they purchased in respondent's development is before us for a second time.  In the first appeal, we held a settlement agreement between the Perrottas and the

1

Association was enforceable, it required the Perrottas to submit both a landscape plan and a site plan to the Association for approval before beginning work on their property, the Perrottas submitted the necessary plans within the time required under the agreement, and the Association prevented the Perrottas from performing the work under the settlement agreement. We accordingly reversed the judgment entered in favor of the Association and the postjudgment order awarding the Association attorney fees and costs and remanded with directions.

The case before us now involves the trial court's award on remand of attorney fees to the Association as the prevailing party in the litigation. The Perrottas contend on appeal they were entitled to recover fees under the Davis-Stirling Act (Act) as the prevailing party, they are entitled to costs as a matter of law even if they are not entitled to fees, and the award of fees and costs to the Association was excessive.

We conclude it was within the trial court's discretion to find the Association as the prevailing party, the Perrottas are not entitled to costs under Code of Civil Procedure section 1032 as the trial court had discretion to determine the Association was the prevailing party, and the amount of fees and costs awarded by the trial court was not affected by a prior award of fees stemming from the Association's successful anti-SLAPP motion against the Perrottas. We shall affirm.

BACKGROUND

The relevant facts and procedure are taken largely from our opinion in the prior appeal,[1] supplemented where necessary by the records in this and the prior appeal.

Winchester is a common interest development governed by the Act, which is set forth in Civil Code[2] section 4000 et seq. and provides general rules for the governance of

---

[1]     *Winchester Community Assn. v. Perrotta et al.* (C075562, July 21, 2016) [nonpub. opn.].

[2]     Undesignated statutory references are to the Civil Code.

planned developments. The community is comprised of upscale, single-family homes in the Sierra Foothills and is managed and maintained by the Association, which is governed by a board of directors (Board) and subject to a recorded declaration of conditions, covenants, and restrictions (CC&R's), the Bylaws of the Association, and the Design Guidelines and Regulations (Design Guidelines). All lot owners in the community are members of the Association.

The Perrottas own lot 85, located at 1101 Holly Leaf Lane. As such, they are members of the Association and subject to the CC&R's, Bylaws of the Association, and Design Guidelines. They purchased the lot, which had been in foreclosure, on September 30, 2009. At that time, the lot contained a residence that was nearly complete and a driveway, but was devoid of any landscaping. The original owner/builder had submitted a site plan that had been approved by the Winchester Design Review Committee (Committee), but he had not submitted a landscape plan. It was a common practice, and completely acceptable, for owners to defer submission of a landscape plan.

Pursuant to section 5.01(a) of the CC&R's, subject to certain exceptions not applicable here, "prior to submittal to the County for building permits and before commencement of construction or installation of any Improvement within Winchester, the Owner planning such Improvement must submit to the Design Committee a written request for approval. The Owner's request shall include structural plans, specifications and plot plans satisfying the minimum requirements set forth in the Design Guidelines . . . ." "The term 'Improvement' . . . includes, without limitation, the construction, installation, alteration or remodeling of any Residence structures, garages, out buildings, walls, fences, swimming pools, landscaping, landscape structures, skylights, patios . . . or any other structure of any kind. Any clearing or grading of a Homesite or alteration of natural drainage courses shall be considered a work of 'Improvement' requiring approval hereunder."

3

The Design Guidelines set forth a "design review process," which must be followed for all major site and/or landscaping improvements. Improvement plans are reviewed by the Committee, which evaluates such plans on the basis of the Design Guidelines.

On December 22, 2009, about three months after the Perrottas purchased their lot, Kyle Bodyfelt, the Association's property manager, directed the Perrottas to provide him with a copy of their "landscape plan" by January 8, 2010. The Perrottas responded that they were "focusing on completing the inside" of their residence and had yet to decide what they wanted outside or "locate and hire a competent landscape designer." Accordingly, they advised Bodyfelt that May 30, 2010, would be a "more realistic" date on which to submit the landscape plan.

On February 17, 2010, the Committee advised the Perrottas that their request for an extension to May 30 was denied and directed them to submit a landscape plan by March 19, 2010. The Committee explained that the Perrottas' occupancy of the residence "on a fairly regular basis without having submitted the required landscaping plans," constituted a clear violation of section 5.14(b) of the CC&R's, which requires that "[a]ll approved landscaping" be completed by the time the county issues a certificate of occupancy.

In February or March 2010, the Perrottas retained Jeff Ambrosia, a licensed landscape architect employed by Yamasaki Landscape Architecture, to develop landscape construction documents for their property. At all relevant times herein, Ambrosia also served as a consultant to the Committee, and as such, reviewed landscaping documents of new homeowners. As a result, he was familiar with the CC&R's and Design Guidelines. The Perrottas instructed Ambrosia to prepare a landscape plan that would be accepted by the Association.

4

On March 25, 2010, Ambrosia sent the Committee a diagram showing a secondary driveway across the front of the residence that was intended to provide access to the front door. The Committee denied the Perrottas' request to install the proposed driveway.

On April 16, 2010, Bodyfelt and members of the Committee met with Charles Perrotta and Ambrosia on the Perrottas' property to discuss the proposed secondary driveway. A week later, the Committee wrote to the Perrottas and proposed three alternatives to the Perrottas' proposed secondary driveway. Ambrosia responded to the letter, noting that the options provided by the Committee "would require a tremendous expense" and result in an unnecessary hardship.

On May 26, 2010, the Committee notified the Perrottas that it was standing by its denial of their request for a "second driveway" and requested that the Perrottas meet with members of the Board and the Committee on June 15, 2010, "to discuss . . . a time frame for submittal and completion of landscape plans . . . ." The Perrottas advised the Committee that they had business out of the area on June 15, 2010, and would be on vacation in early July, and suggested a meeting in late July.

On July 16, 2010, the Board sent the Perrottas written notice of a hearing on August 3, 2010, to address various alleged violations of the Association's governing documents, including the lack of landscaping and failure to submit "plans and fee[s]." The Perrottas advised the Board that they were unavailable on August 3, 2010, and on July 30, 2010, submitted a landscape plan for the property. According to Nancy Jakse, the Board president, the landscape plan contained "a number of elements . . . that were inconsistent with the site plan of the already approved plans" submitted by the prior owner. Accordingly, the landscape plans were not approved.

The hearing went forward on August 3, 2010, without the Perrottas. The Board determined that it needed more information and continued the hearing to October 6, 2010. Meanwhile, on August 4, 2010, the Committee wrote to the Perrottas and

5

requested clarification as to whether they intended to use the previously approved site plan or submit a modified plan of their own.

At the October 6, 2010, hearing, the Perrottas indicated that they intended to complete the project according to the previously approved site plans, and Jakse informed them that there were many elements on the previously rejected landscape plan for which the Board had no "architectural information." The Perrottas agreed to submit a new landscape plan by the end of October 2010, and complete landscaping their property by the end of January 2011. The deadline for submitting the revised landscape plan was later extended to November 2010. Following the hearing, the parties continued to discuss the Perrottas' desire for a secondary driveway but were unable to resolve the issue. The Perrottas did not submit a revised landscape plan by the end of November 2010, and in January 2011, the parties agreed to mediate the dispute.

The mediation took place on April 1, 2011, before retired superior court judge Darrel Lewis. Board president Jakse and Committee chair Richard Breaux represented the Association at the mediation and were accompanied by the Association's counsel. The Perrottas and their counsel were also present. The mediation continued all day and ended with the formulation of a "Settlement Agreement." The document is seven pages in length, with one attachment. The mediator provided a three-page printed document with general terms as a courtesy to the parties to expedite the formulation of the agreement. Some of the provisions set forth therein are crossed out, while others have been edited by hand. Specific terms negotiated by the parties and their attorneys are set forth in four handwritten pages. The document was executed by the parties and their attorneys.

The first three printed pages provided in pertinent part: "The parties hereby agree to settle this dispute in its entirety on the terms set forth below." "[E]ach party waives . . . the right to any known claims" against the other. "It is the intent of the parties that

6

this agreement is binding and enforceable."  "This Agreement represents the complete understanding between the parties."

The remainder of the agreement was handwritten.  It provided in its entirety:

"This agreement pertains to driveway and landscape issues only.  All other issues are dropped at this time.

"Both parties agree that the goal of this agreement is to complete the landscaping and driveway of the residence in question and to obtain a certificate of occupancy from Placer County at the earliest practicable date.

"Perrotta agrees to obtain [a] signed final inspection from Placer County on all permits relating to the subject property not later than September 15, 2011.[3]

"The above deadline of September 15, 2011 shall be extended by the number of calendar days that elapse between the simultaneous submission date of landscape plans and separate site plans to Winchester and the date Perrotta is notified of approval of both said plans.

"The above deadline of September 15, 2011 shall be extended additionally by the number of calendar days that elapse between the submission date of any necessary plans to Placer County and the date Perrotta is notified of approval of said plan.

"Perrotta will submit payment of $300 simultaneously with submission of the landscape plans to Winchester.

"Perrotta will submit payment of $5,000 as a compliance deposit to Winchester simultaneously upon receiving the stamped site plans and landscape plans.  Said deposit shall be placed in escrow and returned to Perrotta upon completion of the site plans and landscaping plans referred to above.  See Section 5.3 of Winchester design guidelines and

---

[3]     The trial court assumed, and the parties did not dispute, that the Perrottas were required to complete all construction, including landscaping, in order to obtain a "signed final inspection" from the county.

regulations. Final inspection of the property will be to determine that the Perrottas are in compliance with the plans.

"Perrotta agrees to obtain a $75,000 completion bond, prior to starting construction, wherein Winchester is solely named as beneficiary of the bond, to be paid to Winchester in the event Perrotta fails to complete their obligations as specified in this agreement. The parties agree that each party will pay 50% of the fees for obtaining this bond.

"Winchester agrees to drop the April 6, 2011 compliance and fine meeting.

"The parties agree that in the event that Perrotta submits a landscape and/or site plan which envisions construction of a second driveway/turnaround within the shaded portion of the setback area as depicted in Attachment A & said plans are otherwise in compliance with the Association['s] governing documents & Design Review Guidelines, the Association agrees to issue Perrottas a variance to permit construction of said driveway [within] the shaded portion of the setback in Attachment A. The parties further agree and understand that the Association's issuance of a variance does not otherwise supersede or replace any additional requirements that may be required by the County for approval of said plan(s) &/or issue of a variance for construction [within] the setback.

"The Association further represents that as of the date of this agreement, the Association is of the opinion that that Perrotta building structure is in compliance with the Association's governing documents and Design Review Committee Guidelines."

On May 19, 2011, the Perrottas submitted a seven-page set of "Landscape Development Plans" and a $300 landscape review fee to the Committee. The plans were prepared by the Perrottas' landscape architect Ambrosia. In addition to a "Cover Sheet," the plans consist of the following pages: "Amenities Plan"; "Hardscape Plan"; "Planting Plan"; "Irrigation Plan"; "Lighting Plan"; "Planting Details"; and "Irrigation Details." Among other things, the plans showed property lines, site envelope, building envelope, building footprint, proposed secondary driveway, fencing, retaining and seating walls,

8

flagstone and asphalt paving, hot tub and concrete pad, pizza oven, stepping stones, metal gate, existing rock shale, and existing drainage canal.

Jakse and Breaux reviewed the plans and found them deficient. In a letter dated May 25, 2011, Breaux informed the Perrottas that "per page 4 of the mediation settlement agreement, you were required to simultaneously submit landscape plans and separate site plans for approval. Since you failed to submit site plans for architectural review to replace or modify the currently approved . . . site plan sheets . . . , no approval action can be taken by the [Committee] relative to the landscape plans. As has been communicated many times before, landscape plans must conform to approved architectural plans." Breaux continued, "There are numerous elements depicted on your landscape plans that are beyond the scope of landscape review and must go through architectural approval; e.g., the driveways, parking pad, spa, expanded deck, retaining walls, fencing, and gate. Any element shown on sheets 1 and 2 of your currently-approved plans that you don't intend to install needs to be removed from your site plan. Similarly, any new or modified elements must be shown with supporting engineering/architectural detail, if required. The proposed site plan must also reflect the grading and drainage modifications that go along with your new or modified elements." Breaux further advised that the landscape elements of the plans (planting, irrigation, & lighting) had been reviewed by the Committee's outside landscape review consultant, who saw no issues, but explained that "approval of the landscape plans can only occur when site plans have been approved first or simultaneously." Finally, Breaux indicated that the "second driveway/turnaround" depicted in the plans extended beyond the shaded area of the setback as agreed to in attachment A to the settlement agreement and noted that "this issue will have to be corrected" in order for "your site plan to be approved when you submit it."

Shortly thereafter, Jakse, Breaux, Bodyfelt, and Ambrosia met on the Perrottas' property to discuss the proposed secondary driveway. During the meeting, Ambrosia acknowledged that the proposed driveway depicted in the plans extended beyond the area

9

provided for in attachment A to the settlement agreement and provided a revised layout, which he "put on the ground so that [Jakse and Breaux] could see that it truly did fit within the shaded area." The Association was concerned that the county might not approve the variance agreed to at the mediation, and Jakse suggested that the Perrottas obtain approval from the county for the proposed driveway before submitting revised plans to the Committee to avoid wasting money on engineering expenses.

Sometime prior to June 30, 2011, Ambrosia, on behalf of the Perrottas, submitted "an exhibit [to the county's planning division] that showed what [they] were trying to do" in terms of the driveway. On June 30, 2011, the Perrottas met with the county's senior planner, and on August 22, 2011, were advised that the agency's director had approved their "request to construct the driveway as shown on the draft Yamasaki plan," contingent upon the submission of "a new grading plan for review and approval by the Placer County Engineering and Surveying Division prior to initiating work on the driveway and/or landscaping." On September 19, 2011, the county advised the Perrottas that a grading permit was not required.

Meanwhile, on August 30, 2011, the Association wrote to the Perrottas, reminding them that the settlement agreement "requires you to 'obtain a signed final inspection from Placer County on all permits relating to the subject property not later than September 15, 2011,' " and noted that "[w]ith less than a month to complete your project, you have yet to obtain landscape and site plans stamped by Winchester, and to pay the $5,000 compliance deposit, both of which are prerequisites to obtaining final County approvals."

The Perrottas did not respond to the Association's August 30, 2011, letter, and on September 23, 2011, the Association sued the Perrottas for breach of the settlement agreement and specific performance.

On October 10, 2011, Ambrosia, on behalf of the Perrottas, submitted a revised 10-page set of "Landscape Development Plans" to the Association. In addition to a "Cover Sheet," the plans consist of the following pages: "Amenities Plan"; "Grading &

10

Drainage Plan"; "Grading Profile"; "Hardscape Plan"; "Construction Details"; "Planting Plan"; "Irrigation Plan"; "Lighting Plan"; "Planting Details"; and "Irrigation Details." The proposed secondary driveway depicted in the revised plans falls within the area set forth in attachment A to the settlement agreement. As compared to the May 2011 plans, the revised plans "added a tremendous amount of detail in terms of grading, drainage, [and] driveway layout," and included elevations as requested by the Association.

On October 20, 2011, the Association advised the Perrottas that "[t]he tendered landscape development plans will be held by the Association with the review of those plans by the Association's Design Review Committee being held in abeyance until such time as a site plan is also furnished to the Association."

On February 14, 2012, the Perrottas filed a cross-complaint against the Association for cancelation and rescission of the settlement agreement and declaratory relief. Among other things, the Perrottas sought a declaration that the Association violated and continues to violate its own CC&R's and Design Guidelines in the landscape approval process.

The cross-complaint also alleged defamation, intentional infliction of emotional distress, elder abuse, and breach of contract. Pursuant to the anti-SLAPP statute, Code of Civil Procedure section 425.16, the Association filed a successful special motion to strike the defamation, intentional infliction of emotional distress, elder abuse, and breach of contract claims. The trial court awarded the Association $5,000 attorney fees for the anti-SLAPP motion.

Following a five-day bench trial in May 2013, the trial court entered judgment in favor of the Association and against the Perrottas. The trial court found that the Perrottas breached the settlement agreement and ordered them to perform their obligations there under the same. In particular, the trial court determined that the settlement agreement constituted a valid and enforceable agreement and rejected the Perrottas' claim that the agreement was ambiguous as to whether they were required to submit both a landscaping

11

and a site plan to the Association for approval. The court found that "[u]nder a plain meaning interpretation, the Settlement Agreement required [Perrotta] to submit both landscape plans and site plans," and determined that "no site plan [had] ever been submitted." The trial court rejected the Perrottas' claim that the September 15, 2011, deadline had been extended and ordered the Perrottas "to file a separate site plan . . . as defined in the Appendix to the Design Guidelines, within 60 days from the date this Judgment is entered." The trial court found against the Perrottas on their cross-complaint. In particular, the trial court found that the Perrottas' claim that the Association violated the CC&R's and Design Guidelines in failing to approve the Perrottas' plans was superseded by the settlement agreement and therefore declined to address it.

Following the trial, the court determined that the Association was the prevailing party and entered a postjudgment order awarding the Association $159,269.61 in attorney fees and costs.

The Perrottas appealed, contending (1) the settlement agreement was unenforceable because it was never consummated, (2) even if it was enforceable, it did not require them to submit a separate site plan in addition to a landscape plan, (3) the September 15, 2011 deadline was extended approximately three months, and (4) even if they were required to submit a separate site plan, the revised plans submitted on October 10, 2011, included such a plan. The Perrottas also assert that the trial court erred in declining to address their claim that the Association violated its own policies and procedures, and awarding the Association attorney fees and costs.

We concluded the settlement agreement was enforceable and required that the Perrottas submit both a landscape plan and a site plan to the Association for approval before beginning work on their property, the September 15, 2011 deadline was extended 81 days, the trial court's implied finding that the revised plans submitted in October 2011 did not include a site plan is not supported by substantial evidence, and the Association

12

prevented the Perrottas from performing under the settlement agreement by refusing to review those plans. Accordingly, we reversed the judgment entered in favor of the Association, as well as the postjudgment order awarding the Association attorney fees and costs, which was based on the judgment.

On remand, the Association filed a motion to strike or tax costs and renewed its motion for attorney fees totaling an adjusted amount of $157,146.44 as the prevailing party, while the Perrottas filed a bill of costs and a motion for $275,932.90 in attorney fees.

The trial court found "the Association ultimately met its objective to force the Perrottas to comply with the settlement agreement, and by extension, the CC&Rs." While the Perrottas achieved some positive net effects, "they were unsuccessful in obtaining a finding of invalidity of the settlement agreement, or a violation by the Association of the CC&Rs and Design under the Guidelines," leading the court to conclude the Association was the prevailing party. The court also found the amount requested by the Association was reasonable and accordingly awarded it the full $157,146.44, and granted its motion to strike or tax costs. The trial court denied the Perrottas' motion to tax or strike costs and for fees pursuant to the Act and section 1717, finding the Association was the prevailing party. The court also modified its prior judgment to include these orders and to conform to our ruling in the prior appeal.

DISCUSSION

I

*Prevailing Party*

The Perrottas contend the trial court erred in finding the Association rather than they were the prevailing party under the Act, and they were therefore entitled to fees and costs under it, or in the alternative, the attorney fee provision in section 1717.

" 'The Davis-Stirling Act, enacted in 1985 [citation], consolidated the statutory law governing condominiums and other common interest developments.' [Citation.]

13

'The Davis-Stirling Act includes provisions addressing alternative dispute resolution (ADR), including the initiation of such nonjudicial procedures, the timeline for completing ADR, and the relationship between ADR and any subsequent litigation.' [Citation.] [¶] Among other things, the legislation provides that '[a]n association or a member may not file an enforcement action in the superior court unless the parties have endeavored to submit their dispute to alternative dispute resolution pursuant to this article.' [Citation.]" (*Rancho Mirage Country Club Homeowners Assn. v. Hazelbaker* (2016) 2 Cal.App.5th 252, 258 (*Rancho Mirage*).)

The Act contains the following provision: "In an action to enforce the governing documents, the prevailing party shall be awarded reasonable attorney's fees and costs." (§ 5975, subd. (c).) This has been extended to include costs and fees expended in ADR under the Act. (*Grossman v. Park Fort Washington Assn.* (2012) 212 Cal.App.4th 1128, 1134.)

In determining who is the prevailing party, a trial court is not bound by any "rigid interpretation" of that term, but instead must determine "on a practical level" which side prevailed. (*Heather Farms Homeowners Assn. v. Robinson* (1994) 21 Cal.App.4th 1568, 1574.) The trial court's determination of the prevailing party is reviewed for abuse of discretion. (*Villa De Las Palmas Homeowners Assn. v. Terifaj* (2004) 33 Cal.4th 73, 94.) " ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced [from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' [Citations.]" (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1339.)

The Perrottas claim they were the prevailing party by accomplishing their primary objective, to show that they did not breach the settlement agreement and were entitled to have the Association accept their October 2011 plans. They assert the cross-complaint was essentially defensive in nature, and that a defendant who alleges an essentially defensive cross-complaint may be the prevailing party notwithstanding an adverse result

14

on the cross-complaint.  The Perrottas additionally note that their answer to the Association's complaint included affirmative defenses such as failure of performance by the Association, waived claims by the Association, and the Association's breach excused the Perrottas' performance, which would help achieve their primary objective.  In addition, the Perrottas observe the Association refused their request to admit they received the revised plans in October 2011, and refused to admit that it never responded to this submission of completed plans.

The trial court was guided by two cases, *Rancho Mirage* and *Almanor Lakeside Villas Owners Assn. v. Carson* (2016) 246 Cal.App.4th 761 (*Almanor*).  We are likewise persuaded by these cases.

*Rancho Mirage* involved a dispute between a condominium owner and the homeowner's association regarding changes the owner made to the patio area of the condominium unit.  (*Rancho Mirage, supra*, 2 Cal.App.5th at pp. 255-256.)  Pursuant to mediation under the Act, the parties agreed for the owners to make certain modifications within 60 days.  (*Rancho Mirage,* at p. 256.)  When the modifications were not made in the allotted time, the association sued, seeking specific performance and declaratory relief; subsequently the parties reached agreement on modifications slightly different from those set forth in the mediation agreement.  (*Id.* at p. 257.)  The parties could not agree on who should bear the litigation expenses, and the trial court ultimately awarded attorney fees and costs to the homeowner's association.  (*Id.* at pp. 257-258.)

The award was affirmed on appeal.  (*Rancho Mirage, supra*, 2 Cal.App.5th at p. 256.)  It found the trial court's determination that the homeowner's association was the prevailing party on a practical level was "not beyond the bounds of reason."  (*Id.* at p. 261.)  While the owners focused on the differences between the modifications made and those in the settlement agreement, the Court of Appeal noted that "[t]he 'action' at issue in the section 5975 analysis includes not only the litigation in the trial court, but also the prelitigation ADR process. [Citation.]"  (*Ibid.*)  The Court of Appeal found

15

"[t]he Association wanted defendants to make alterations to their property to bring it in compliance with the applicable CC&Rs, specifically, by installing openings in the side wall of the patio, and altering the drapery on the patio. The Association achieved that goal, with defendants completing the modifications to the patio in September 2014." (*Ibid.*)

*Almanor* involved a dispute in which the homeowners association sought to impose fines and related fees for the property owners' alleged rules violations related to the owners' leasing of their properties as short-term vacation rentals. (*Almanor, supra,* 246 Cal.App.4th at p. 765.) The defendant property owners disputed both the fines and the association's authority to enforce restrictions on their properties. (*Id*. at pp. 766-767.) They filed a cross-complaint "for damages and equitable relief based on breach of contract, private nuisance, and intentional interference with prospective economic advantage," as well as establishing the imposition of fines was unlawful, arbitrary, and unfair. (*Id*. at p. 767.) The trial court ruled against the defendants on the cross-complaint, but also rejected many of the fines, upholding only $6,000 of the $54,000 in fines assessed by the homeowner's association. (*Id*. at pp. 767-768, 769.) It found the homeowner's association to be the prevailing party and awarded it costs and fees under the Act. (*Id*. at pp. 768-769.)

The Court of Appeal affirmed the award of costs and fees. (*Almanor, supra*, 246 Cal.App.4th at p. 765.) It found the pivotal issue in the litigation was whether the fines were enforceable under California law and the CC&Rs. (*Id.* at pp. 774-775.) While the defendants' partial success on the fines imposed substantially reduced their liability for damages and supported their position that the rules could not impose an unreasonable burden on their property, "by upholding a subset of the fines, the court ruled more broadly that Almanor could impose reasonable use restrictions on the Carsons' properties, despite their authorized commercial use. That ruling echoed Almanor's stated objective at trial that the association sought to counter the Carsons' position that 'because

16

their lot is zoned "Commercial," they are not bound by the CC&R's or the Rules.' " (*Id.* at p. 775.) Finding Almanor was the prevailing party was not an abuse of discretion. (*Id.* at p. 776.)

We likewise find no abuse of discretion in finding the Association to be the prevailing party. Both in the events leading up to the mediation and those after, the Association sought to get the Perrottas to submit acceptable landscaping plans and then landscape their home in accordance with the CC&R's and the settlement agreement. While the Perrottas sought to submit the necessary plans following the agreement, a dispute over their timely compliance led to the instant litigation. In response to the Association's suit, the Perrottas claimed, at trial and on appeal, that they did not breach the agreement and that the agreement was invalid and unenforceable. While they ultimately succeeded in establishing that they had not breached the agreement and that the Association prevented them from completing one of their obligations, the Perrottas nonetheless failed to establish that the settlement agreement was invalid or that they were excused from their duty of performance.[4]

We are unpersuaded by the Perrottas' claim that their failure to prevail on the cross-complaint should be overlooked as the claims therein were essentially defensive in nature. This argument is based on *Hsu v. Abbara* (1995) 9 Cal.4th 863, where the Supreme Court held a trial court may not find there was no prevailing party under section 1717 "when the court renders a simple, unqualified decision in favor of the defendant on the only contract claim in the action." (*Hsu,* at pp. 865-866.) The Perrottas rely on footnote 10 of the *Hsu* opinion, which states in full, "When there are cross-actions on a contract containing an attorney fees provision, and no relief is awarded in either action, a

---

[4]     Among the affirmative defenses raised by the Perrottas was that performance of their landscaping obligations was excused by the Association's failure of performance and the Association's actions also excused their duty to perform.

17

trial court is not obligated to find that there is no party prevailing on the contract for purposes of section 1717.  If the court concludes that the defendant's cross-action against the plaintiff was essentially defensive in nature, it may properly find the defendant to be the party prevailing on the contract." (*Id.* at p. 875, fn. 10.)  This does no more than state a court has the discretion to determine a cross-complaint was defensive rather than a focus of the litigation when determining the prevailing party.  It was within the trial court's discretion to conclude the cross-complaints were more than merely defensive when determining who prevailed in this litigation.[5]

In applying the abuse of discretion standard to the trial court's determination of the prevailing party under the Act, we are mindful that we cannot substitute our decision for that of the trial court.  Whether or not we agree with the court's decision is immaterial.  Since the determination that the Association is the prevailing party does not exceed the bounds of reason, it must be upheld on appeal.[6]

II

*Costs Were Properly Awarded to the Association*

The Perrottas claim they are entitled to costs pursuant to Code of Civil Procedure section 1032.

"Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." (Code Civ. Proc., § 1032, subd. (b).)  " 'Prevailing party' includes the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor

---

[5]      At oral argument, there was a dispute between the parties as to whether the Perrottas breached the settlement agreement by failing to pay the $5,000 deposit.  We do not address the dispute, as it is unnecessary to resolve this appeal.

[6]      Since there is a separate statutory ground for fees and costs, it is unnecessary to consider the attorney fee provision for contract claims in section 1717. (*Rancho Mirage, supra*, 2 Cal.App.5th at p. 260.)

18

defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant. If any party recovers other than monetary relief and in situations other than as specified, the 'prevailing party' shall be as determined by the court, and under those circumstances, the court, in its discretion, may allow costs or not and, if allowed, may apportion costs between the parties on the same or adverse sides pursuant to rules adopted under Section 1034." (*Id.*, subd. (a)(4).)

The Perrottas assert they are statutorily entitled to costs because the Association was denied relief on its complaint and the Perrottas were denied relief on their complaint, making them, as defendant to the action, the prevailing party. The Association obtained other than monetary relief here, a judgment that the Perrottas were bound to comply with the settlement agreement and must complete the landscaping of their property and obtain a final inspection within 56 days of the issuance of our remittitur. It was therefore within the trial court's discretion to determine the prevailing party. As with the award of attorney fees, the implied finding that the Association was the prevailing party for the purposes of awarding costs was within the trial court's sound discretion.

III

*The Fees and Costs were Proper*

The Perrottas' final contention is the fees and costs should be lowered by $14,222.50. According to the Perrottas, pursuant to the anti-SLAPP motion, the association sought $19,222.50 in fees but was awarded only $5,000 by the trial court. This amount was not included in the awards of costs and fees reversed by this court in the first appeal. The Association did not seek the $5,000 it received for the anti-SLAPP motion in its motion for fees on remand, but on remand, sought an additional $14,222.50 in fees related to its work on the motion, which the trial court awarded. They contend the trial court was bound by the original award as the Association did not timely move for reconsideration of the original award pursuant to Code of Civil Procedure section 1008.

19

The Association asked for only $11,615 in fees associated with the anti-SLAPP motion in the original proceedings. The $14.222,50 amount asserted by the Perrottas on appeal is supported by a citation to the opposition to the Association's motion for attorney fees they filed in the trial court on remand. That amount is determined by the Perrottas' counsel by identifying entries in the billing records submitted by the Association that counsel believed were attributable to the anti-SLAPP motion.

Even assuming the Perrottas cite sufficient facts to support their claim, it was within the trial court's authority to reconsider its earlier ruling on its own motion. A trial court retains jurisdiction to reconsider any final order. (*Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1103-1104.) A court may reconsider a prior ruling so long as it notifies the parties and allows briefing and argument on the issue. (*Id.* at p. 1008.) Whether and how much the Association's fees should be reduced because of the $5,000 awarded for the anti-SLAPP litigation was before the trial court, the matter was briefed, and the court held a hearing on the issue of costs and fees. It was within the trial court's discretion to conclude the Association was entitled to additional fees related to the anti-SLAPP motion, or that the fees disallowed in the original were fairly attributable to the remaining litigation.[7]

---

[7]    This inference is supported by the fact that the anti-SLAPP motion obtained the dismissal of only four of the Perrottas' seven cross-claims. It was within the court's discretion that the $5,000 originally awarded was attributed to work associated with the dismissed claims, and the Association sought on remand fees related to work relevant to the claims not dismissed in the anti-SLAPP motion, but upon which the Association ultimately prevailed.

## DISPOSITION

The judgment is affirmed.  Respondent shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)

        /s/             
BLEASE, Acting P. J.

We concur:

     /s/            
HULL, J.

     /s/            
MURRAY, J.