Filed 1/16/25  Henkel v. Blasi CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| MARK HENKEL et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> PETER BLASI et al., <br><br> Defendants and Appellants. | D082895, D083656, D084290 <br><br><br> (Super. Ct. No. 37-2019-00043047-CU-OR-NC) |
| MARK HENKEL et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> PETER BLASI et al., <br><br> Defendants and Respondents. | |

CONSOLIDATED APPEALS from a judgment and post-judgment orders of the Superior Court of San Diego County, Blaine K. Bowman and Michael D. Washington, Judges.  Affirmed.

Dillon Miller Ahuja & Boss, Scott Alan Miller and Devon R. Franza for Defendants and Appellants in appeal numbers D082895 and D083656, and for Defendants and Respondents in appeal number D084290.

Seltzer Caplan McMahon Vitek, Andrea N. Myers, Sarah M. Shekhter and Chelsea Kanzler for Plaintiffs and Appellants in appeal number D084290, and for Plaintiffs and Respondents in appeal numbers D082895 and D083656.

These three appeals arise from a dispute between Mark and Tiffany Henkel and their neighbors Peter and Tamara Blasi, who allegedly trespassed onto the Henkels' property to cut their cape honeysuckle shrubs to obtain a better view. The jury found the Blasis committed trespass to timber and decided in favor of the Henkels on the Blasis' cross-complaint.

In appeal number D082895, the Blasis contend the judgment is not supported by substantial evidence (1) they or their agents entered onto property owned by the Henkels and (2) the Henkels were harmed. The evidence established, however, the approximate property line dividing the Henkels' and the Blasis' abutting properties, and testimony establishing the depth and location of the shrubs is sufficient to establish the Blasis or their agents entered onto the Henkels' property. And Mark's testimony the shrubs' cutting caused a decrease in their aesthetic value and functionality as a privacy screen is adequate to support the jury's harm finding. Thus, we affirm the judgment.

In appeal number D084290, the Henkels appeal the court's denial of their motion for attorney fees. They contend the trial court erred in denying their motion to the extent it was grounded in Civil Code section 5975 (part of the Davis-Stirling Common Interest Development Act), which provides for an award of reasonable attorney fees to the prevailing party in an action "to

2

enforce the governing documents" of a common interest development. (Civ. Code, § 5975, subd. (c).) As the relevant pleadings were not actions "to enforce the governing documents" of the Association, the trial court did not err in finding the Henkels unentitled to fees. (*Ibid.*) We therefore affirm.

Finally, in appeal number D083656, the Blasis purport to attack the trial court's denial of their motion to strike or tax costs but primarily challenge the trial court's granting of a good faith settlement motion filed by nonparties The Crosby Estate at Rancho Santa Fe Master Association and Keystone Pacific Property Management, LLC. The Henkels settled a lawsuit with the Association and Keystone that was consolidated with the Henkels' suit against the Blasis. The Blasis claim entitlement to an offset of their liability to the Henkels against the money paid by the Association and Keystone to the Henkels such that the Henkels purportedly would no longer be prevailing parties entitled to costs. We conclude the Blasis fail to carry their burden to establish their entitlement to an offset. Even were an offset warranted, the Henkels still were the prevailing parties. Accordingly, we affirm the denial of the Blasis' motion to strike or tax costs.

I.

In 2013, the Henkels purchased a lot in the common interest development The Crosby Estate at Rancho Santa Fe. In 2017, they planted cape honeysuckle shrubs along the perimeter of their property where it abuts the upslope property.

In 2018, the Blasis moved into the upslope property. They, like the Henkels, are members of the Association. The Blasis or their hired helpers cut three feet off the top of the Henkels' shrubs without permission.

In 2019, the Henkels filed a lawsuit against the Blasis, asserting causes of action for trespass to timber, trespass, and injunctive relief. The

3

Blasis cross-complained, asserting causes of action for negligence, negligent infliction of emotional distress, battery, assault, nuisance, trespass, intrusion into private affairs, stalking, unlawful business practices, and injunctive relief.

Subsequently, the Blasis filed a lawsuit against the Association and Keystone asserting causes of action for breach of contract, negligence, breach of fiduciary duty, nuisance, aiding and abetting, unlawful business practices, and declaratory relief. The Association and Keystone cross-complained against the Henkels, asserting causes of action for express indemnity, equitable indemnity, contribution, and declaratory relief. The Henkels filed a cross-complaint against the Association and Keystone for breach of fiduciary duty, breach of contract, negligence, and declaratory relief.

The court consolidated these matters. Before trial, the Blasis and the Henkels settled their respective disputes with the Association and Keystone. The Blasis also dismissed all their causes of action against the Henkels except for nuisance, trespass, and negligence and the request for punitive damages.

After a trial, the jury returned a verdict finding the Blasis liable to the Henkels for trespass to timber but not trespass. The jury awarded the Henkels damages of $500 and punitive damages of $50,000, but the trial court later reduced the punitive damages award to $0 due to inadequate evidence of the Blasis' ability to pay. The jury found in favor of the Henkels on all the Blasis' causes of action.

After the Henkels filed their memorandum of costs, the Blasis filed a motion to strike or tax costs that the trial court denied. The court entered an amended judgment awarding costs of roughly $72,000. It denied the Henkels' motion for an award of prevailing party attorney fees. Finally, the court

4

granted the Association and Keystone's motion under Code of Civil Procedure section 877 for a court determination that their settlement with the Henkels was made in good faith.

## II.

We address each of the three appeals in turn.

## A.

First, in appeal number D082895, the Blasis contend the judgment against them must be reversed because insufficient evidence supported the jury's verdict finding they committed trespass to timber. Specifically, the Blasis claim no substantial evidence exists that (1) they trespassed onto the Henkels' property and (2) the Henkels were harmed by the trespass. We conclude substantial evidence supported the jury's verdict and affirm.

To prevail on their claim for trespass to timber, the Henkels had to prove (1) they owned the property, (2) the Blasis intentionally entered that property and cut down or damaged their shrubs, (3) the Blasis did so without their permission, (4) the Henkels were harmed, and (5) the Blasis' actions were a substantial factor in causing that harm. (CACI No. 2002; Civ. Code, § 3346(a); Code Civ. Proc., § 733.) Lost aesthetics and functionality are relevant considerations in assessing harm. (CACI No. 2002.)

We review the Blasis' challenge for substantial evidence. (*TRC Operating Co., Inc. v. Chevron USA, Inc.* (2024) 102 Cal.App.5th 1040, 1102.) Our review "*begins* and *ends* with the determination as to whether, *on the entire record*, there is substantial evidence, contradicted or uncontradicted, which will support the determination, and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for" the jury's. (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873-874.) "Substantial evidence is evidence of

5

ponderable legal significance, reasonable in nature, credible, and of solid value." (*Ermoian v. Desert Hospital* (2007) 152 Cal.App.4th 475, 501.) The testimony of even a single party witness can be substantial evidence requiring affirmance. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614.)

1.

To start, the Blasis attack the sufficiency of the evidence for the first and second elements of a trespass to timber claim by arguing the Henkels were required to produce a survey or provide expert testimony to establish their property's boundary line. They claim "the technical location of the boundary line is not one reasonably within the Henkels' common knowledge or rationally based on their own perceptions." Thus, in the Blasis' opinion, there was insufficient evidence they or anyone they hired ever entered the Henkels' property and trimmed their shrubs.

First, we reject the contention that a survey or expert testimony was required to establish the boundary line. The Blasis cite no authority for this proposition. Nor did they object below to Mark's testimony about the location of the boundary line, so the point is forfeited. (See *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.)

Second, we conclude sufficient credible and solid record evidence supports the jury's finding that the Blasis intentionally entered onto property owned by the Henkels. At the relevant time, the Henkel and Blasi lots were divided by a metal fence. The fence was not directly on the boundary line, however; according to the Henkels, parts of the fence were instead on the Blasis' property, with single-digit inches of the Blasis' property extending past the Henkels' side of the fence.

According to Peter, a surveyor he hired placed stakes to mark the actual property line. During his trial testimony, Mark would not commit to

6

whether the stakes demarcated the property line.  In a video admitted into evidence and played at trial, however, Mark tells people hired by the Blasis, "Hey!  Get off my property!  This side of the stakes is my property."

Mark testified the shrubs were planted on his side of the fence, about two to four feet away from the fence.  He said the shrubs are "more than three feet wide."  Peter said they were "probably . . . 7 to 10 feet" wide.  They ran the length of the property, about 80 feet.

The Blasis began cutting the Henkels' shrubs in early 2019, several months after moving into the upslope property.  According to Mark, he and his wife could see and hear either the Blasis or people they hired cutting the shrubs from behind the Blasis' side of the fence.  Most of the trimmings were "small and somewhat in conspicuous [sic]."

There was, however, one "large" trimming that caused "the most damage."  In June 2019, while the Henkels were not at their house, the Blasis trimmed roughly three feet off the top of all the shrubs.  Videos from the Henkels' security camera showed the shrubs during and after the trimming.  In the earlier video, the shrubs were as tall as the top of the "M" in "AM" on the video's timestamp.  An hour later, the shrubs reached only as far as the bottom of the same "M."  Mark testified the earlier video also shows someone grasping and trimming shoots on the side of the shrubs farthest from the Blasis' property using a trimmer.

On these facts, we agree with Mark that "it would be physically impossible to cut the whole top of the honeysuckle so [one] could see directly over it without coming to [the Henkels'] property."  To trim the farthest portions of the shrubs—at least five feet from the fence, regardless of whether the space between the fence and the shrubs was maintained or not—one would have to reach over the whole depth of the shrubs planted on the

7

Henkels' property.  The evidence of that reaching into what is undisputedly the Henkels' property is sufficient for the jury to conclude the Henkels established a trespass, regardless of the exact location of the boundary line.

2.

The Blasis also challenge the jury's finding on the fourth element, harm, claiming "[n]o evidence was introduced showing that the Henkels' fear of lost privacy had any basis in reality" and "there was no evidence that the aesthetics of the shrub(s) were any different than when the Henkels trimmed them."

The record, however, contains such evidence.  As to aesthetics, Mark testified the Blasis' cutting of the shrubs caused a loss in aesthetics because before the shrubs "were taller and they were more lush" and somewhat more dense.  The Henkels had the shrubs at the height they wanted.  This testimony is substantial evidence of diminished aesthetics and alone is sufficient to establish harm.  (*In re Marriage of Mix*, 14 Cal.3d at p. 614.)

Moreover, the evidence also establishes the cutting caused a decrease in privacy that affected the way the Henkels used and enjoyed their property until the shrubs fully regrew roughly 14 months later.  Before the cutting, the Henkels "were outside all day every day."  But after the Blasis cut the shrubs, the Henkels "didn't use the backyard, . . . avoided using the pool as much, didn't use the hot tub for sure because th[e Blasis' yard] looks down on the hot tub, [and kept] the blinds shut in the kids' bedroom[s]."  Besides, according to Tiffany, the Henkels "didn't want to see the[ Blasis and] didn't want the[ Blasis] to be able to see [them]."  After the Blasis cut three feet off the top of the shrubs, however, the shrubs did not block the Henkels' view of the Blasis.

The Blasis argue the Henkels failed to "demonstrate that the shrubs were trimmed to a lower height than they would have been otherwise." Assuming without deciding this is relevant, we disagree. Mark testified that when he trims the honeysuckle, he cuts off "the flyaways, the little branches that come off," to "just kind of keep it neat and clean." He testified the shrubs were roughly eight feet tall when the Blasis moved in, although their height varies across the span of the slope according to what is needed for privacy purposes. As of trial, when the Blasis no longer lived upslope, Mark testified the shrubs were between six and ten feet high, depending on their location along the property line. Thus, a dramatic "topping" of the shrubs by three feet is not consistent with Mark's testimony as to how he maintained the shrubs.

Lastly, the Blasis fault the Henkels for not replacing the shrubs to mitigate damages. But the Blasis point to no authority requiring they do so. At any rate, Mark testified he and his family opted to wait for the shrubs to grow back and not use their backyard over replacing the shrubs with new ones because any replacements would have been only three to five feet tall and would have needed to grow for at least as long as the topped shrubs to reach the original, desired height. We accordingly find this argument unpersuasive.

To the extent the Henkels imply they should have been awarded double or treble damages, they failed to cross-appeal the judgment; accordingly, we do not reach this forfeited issue. (See *Valentine v. Plum Healthcare Group, LLC* (2019) 37 Cal.App.5th 1076, 1090, fn. 4.)

In short, the jury's verdict in favor of the Henkels was supported by substantial evidence. We affirm the judgment in favor of the Henkels.

9

B.

Second, in appeal number D084290, the Henkels claim the trial court erred in denying their motion for more than $1.1 million in attorney fees because the action between them and the Blasis was "to enforce the governing documents" of the Association under Civil Code section 5975(c). We conclude neither the Henkels' nor the Blasis' claims against each other sought to enforce any Association governing document, so the Henkels were not entitled to attorney fees. We thus affirm.

1.

The Henkels moved for an award of attorney fees under Civil Code section 1717, claiming the Association's Custom Lot Declaration entitled them to contractual fees as a prevailing party.

After the motion was fully briefed, the case was reassigned to a different judicial officer. The new judicial officer issued a tentative ruling asking the parties to be prepared to discuss at the hearing "*how* attorney fees are to be apportioned/reduced/parsed to distinguish between and account for those attorney fees that were incurred in relation to the Davis-Sterling Act and governing documents enforcement as opposed to those attorney fees that were incurred with regard to claims not necessarily covered by the . . . Act."

After argument, the court requested supplemental briefing regarding a recently decided case interpreting section 1717. The Henkels' supplemental brief sought fees under both section 1717 and, for the first time, section 5975, claiming the litigation was an action to enforce the Association's governing documents. The Blasis' brief claimed the Act was inapplicable to the Henkels' and Blasis' tort claims against one another.

The trial court's tentative ruling denied the motion. During argument, the Henkels noted the court "did not address" their "argument under Civil

10

Code Section 5975." The Blasis' counsel responded section 5975 fees "should be rejected flat out because it wasn't the basis for the moving papers" and was only "raise[d] in supplemental briefing." Nonetheless, counsel claimed the argument failed on the merits because the Blasis "didn't have an action to enforce the governing documents." The court responded, "Right." The court adopted the tentative and denied the motion under section 1717(b)(2).

2.

We discuss the standard of review before turning to the merits.

a.

As an initial matter, the parties dispute the appropriate standard of review. The Henkels seek de novo review because their appeal presents a question of law and turns on statutory interpretation: namely, "if HOA governing documents were sought to be enforced." The Blasis argue the abuse of discretion standard applies, reasoning the Henkels' quarrel is with the court's determination that the gravamen of the action was not to enforce the Association's governing documents.

Generally, we review for abuse of discretion a post-trial award of attorney fees. (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751.) "However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law." (*Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 142.)

We conclude whether this action was one to enforce the Association's governing documents is a question of law reviewed de novo. While the parties contest the factual underpinnings relevant to that determination, the facts themselves—for example, the causes of action asserted—are not

11

disputed, making de novo review appropriate.  (*Mountain Air Enterprises*, 3 Cal.5th at p. 751.)

b.

While the Blasis argue the Henkels forfeited their section 5975 argument by failing to raise it until supplemental briefing in the trial court, because (1) the Blasis had the opportunity to respond to the argument both in their subsequent supplemental brief and at argument and (2) the trial court did not find the argument forfeited, we address the issue on the merits. Applying de novo review, we determine the trial court correctly denied the Henkels' motion for attorney fees.

"Each party to an action must pay its own attorney fees unless a statute or contract requires the opposing party to pay them."  (*LNSU #1, LLC v. Alta Del Mar Coastal Collection Community Association* (2023) 94 Cal.App.5th 1050, 1081.)  The Henkels do not appeal the trial court's determination they were unentitled to contractual fees.

As to statutory fees, the Act's attorney fee provision is mandatory. (*Rancho Mirage Country Club Homeowners Assn. v. Hazelbaker* (2016) 2 Cal.App.5th 252, 258.)  So long as the movant is a prevailing party "[i]n an action to enforce the governing documents," the movant "*shall* be awarded reasonable attorney's fees and costs."  (§ 5975(c), italics added.)  "'Governing documents' means the declaration and any other documents, such as bylaws, operating rules, articles of incorporation, or articles of association, which govern the operation of the common interest development or association." (§ 4150.)  Thus, the literal million-dollar question here is whether this action was one to enforce the Association's governing documents.  It was not.

First, the Henkels claim we must expansively construe the phrase "an action to enforce the governing documents."  To the contrary, we are *cabined*

12

by the Legislature's language choice.  Had it intended so broad a construction as the Henkels advance, the Legislature would have used a more expansive phrase, such as "any action 'arising out of or related to' the governing documents."  (*Salawy v. Ocean Towers Housing Corp.* (2004) 121 Cal.App.4th 664, 674.)  It did not do so.

Second, we disagree with the Henkels' claim that "there is no legal support for the Blasis' assertion that, whether they were seeking to enforce HOA governing documents, must be determined solely from the face of their pleadings."  We have held: "To determine whether appellants sought by their action to enforce the Association's governing documents, and therefore were liable for attorney fees because they failed to do so, we examine the allegations of their complaint."  (*LNSU #1*, 94 Cal.App.5th at p. 1082.)  As the Blasis note, caselaw consistently holds it is the pleadings that determine the nature of an action.  (See, e.g., *Williamson v. Pacific Greyhound Lines* (1944) 67 Cal.App.2d 250, 253 ["The authorities are uniform in holding that the nature of the action with respect to whether it is based on a breach of contract or sounds in tort must be determined by the gravamen, or essential facts or grievance as alleged, to be ascertained from a consideration of the pleading as a whole."]; *Vera v. REL-BC, LLC* (2021) 66 Cal.App.5th 57, 64.)  The Henkels, meanwhile, cite no contrary authority.  We thus find unavailing the Henkels' arguments premised on discovery, the motion to consolidate, trial briefs, the joint trial readiness conference report, motions in limine, and trial exhibits.  The pleadings are the key.

Given the numerous pleadings and parties in the consolidated action, the question then becomes which pleadings are relevant to determining the nature of the litigation.  To the extent the Henkels suggest the pleadings brought by or against the Association and Keystone are relevant, we

13

disagree. To allow the Henkels to bootstrap the nature of their suit to the previously resolved action involving the Association and the Keystone would be unjust. In our view, only the pleadings filed by the Henkels against the Blasis and vice-versa are relevant in deciding the nature of the action.

Third, we are unpersuaded by the Henkels' argument that "[t]here simply is no requirement that enforcement of HOA governing documents be the 'gravamen' of the Blasis' suit." They claim "[t]he prominence of the governing-document enforcement effort and the presence and relationship of other claims might affect the *amount* of fees to be recovered, but not entitlement to an award." Yet to be entitled to fees, at least *one* cause of action must seek to enforce the governing documents to some degree. In *Salawy*, for example, the court of appeal concluded the predecessor to section 5975 applies "if the essence of the claim falls within the enforcement of the governing documents." (*Salawy*, 121 Cal.App.4th at pp. 671, 673, fn. 6.) Many courts of appeal have looked to the "gravamen" (e.g., *Rancho Mirage*, 2 Cal.App.5th at p. 259) or "gist" (e.g., *Kaplan v. Fairway Oaks Homeowners Ass'n* (2002) 98 Cal.App.4th 715, 720) of the complaint to determine if an action is one to enforce the governing documents. We find those cases persuasive and follow them.

Here, the essence of each claim the Henkels and Blasis asserted against one another sounded purely in tort. The Henkels brought trespass and trespass to timber claims premised on the Blasis' cutting of their shrubs. They sought to enjoin the Blasis from further trespass, but not on the ground of any governing document.

The Blasis, meanwhile, brought causes of action for negligence, battery, assault, nuisance, trespass, intrusion into private affairs, stalking, and unlawful business practices. Their request for injunctive relief sought to

14

enjoin the Henkels from continued activities constituting nuisance. None of these claims invokes a governing document as the basis for the wrong alleged or relief sought.

Although an action need not be on a contract to entitle a prevailing party to fees under section 5975, something more is required than the causes of action and requested relief here. The cases on which the Henkels rely to contend otherwise do not help them. First, unlike here, the pleading in *Champir, LLC v. Fairbanks Ranch Assn.* (2021) 66 Cal.App.5th 583, 588, contained a claim for breach of the governing documents. And *Salehi v. Surfside III Condominium Owners Assn.* (2011) 200 Cal.App.4th 1146, 1151, is distinguishable because (1) the decision does not specify what eight of the ten causes of action were—they could have been contract claims—and (2) there "[t]he gravamen of the complaint is that, in violation of the CC&R's," the homeowners' association took or failed to take certain actions. Here, on the other hand, the Association's governing documents do not provide the basis for any claim.

The Henkels insist the Blasis "invoke[d] the HOA rules and regulations . . . throughout their operative cross-complaint" sufficient to anchor an award of fees. Yet these scattered and nonspecific invocations are less compelling than the Henkels suggest. Most simply acknowledge the existence of the Association, unspecified "rules," or Association procedures, which are givens in any common interest development but do not alter the essence of the relevant claims.

The "strongest" of these references is in the Blasis' dismissed cause of action for injunctive relief, in which they alleged that absent an injunction, the Henkels would continue to "fail to maintain their bushes/trees[ and] . . . to improperly and unsafely plant bushes and trees without the property

safety sign-offs as required per [the Association]." But this allegation does not identify any provision of any specific governing document the Henkels allegedly breached. As the trial court noted, "the Henkels cannot invoke just *any* generic requirements of the HOA, they have to invoke requirements of the HOA that are specifically created *by the Custom Lot Declaration*. It is not clear th[e] 'property safety sign-offs' that were being referenced in the Blasis' cross-complaints fall into such a category." While the trial court considered evidence presented at trial to conclude the Blasis were, in part, seeking to enforce the Custom Lot Declaration, we disagree that this vague reference is sufficient to bring this suit within the Act's ambit. We are not constrained by any contrary position the Blasis may have adopted below in seeking consolidation. (See *Filtzer v. Ernst* (2022) 79 Cal.App.5th 579, 583-584 [application of judicial estoppel discretionary].)

Ultimately, "[t]he complaint nowhere mentions section 5975; the charging allegations neither cite nor quote any provision of any governing document; the prayer for relief does not ask the court to enforce any provision of the governing documents; and no governing document or part thereof is attached to the complaint. We would expect to find such content in the complaint had appellants sought enforcement of the Association's governing documents under section 5975. Its absence shows this case is not that type of enforcement action." (*LNSU #1*, 94 Cal.App.5th at p. 1083.)

To the extent the Henkels suggest the new judicial officer, in denying fees, impermissibly reconsidered the amended judgment "that the Henkels shall have and recover from the Blasis compensatory damages in the amount of $500.00 with prejudgment interest, costs of suit in the amount of $72,471.61, [and] attorneys' fees as adjudged by the Court upon noticed motion," we are unconvinced. First, the authority the Henkels cite for this

16

proposition—*In re Marriage of Oliverez* (2015) 238 Cal.App.4th 1242—concerns section 1008 reconsideration motions, which are not at issue here. (*Id.* at p. 1247.) Second, we do not construe the quoted language in the amended judgment as affirmatively and finally deciding the Henkels were entitled to attorney fees. The language provides for recovery "as adjudged by the Court upon noticed motion." Had the Henkels failed to file a noticed motion, the court could not have awarded them fees, regardless of the language of the judgment. The same is true if the noticed motion failed to establish an entitlement to recover fees. Given the procedural posture, the new judicial officer was free to exercise independent judgment as to whether fees were warranted in this matter and not simply decide their amount.

In sum, because no cause of action brought by the Henkels or the Blasis against the other was premised on the governing documents, the Henkels were not entitled to fees under section 5975. The court therefore did not err in denying their fee motion, and we affirm.

C.

Finally, in appeal number D083656, the Blasis argue (1) the Henkels were not truly the prevailing party for costs because damages should have been offset to $0 after the court granted the Association and Keystone's good-faith motion; or, alternatively, (2) the court erred in granting the good-faith motion, which should be set aside. When we requested supplemental briefing on the second issue given the Association and Keystone are not parties to this appeal, the Blasis responded we do not need to reach this argument "unless [we] reverse[ ] the trial court's decision denying the Henkels' fee motion." Given our disposition of appeal number D084290, we consider the second argument withdrawn. As to the first, we conclude the Blasis fail to establish

17

their entitlement to an offset or that an offset would have affected the Henkels' prevailing party status.  We accordingly affirm.

1.

When the Henkels settled with Keystone and the Association, the Association agreed to pay the Henkels approximately $385,000 within thirty days of, as relevant here, (1) execution of the settlement agreement and (2) "[d]etermination by the Superior Court of California that the settlement is in good faith."

After entry of judgment, the Association and Keystone moved under Code of Civil Procedure section 877 for a determination of good faith settlement.  The trial court found the agreement's conditions "required" a ruling on the motion, and thus it concluded the motion fell within its retained jurisdiction and granted it.

After the Henkels filed their memorandum of costs, the Blasis filed a motion to strike or tax costs that the trial court denied.  The amended judgment awarded more than $70,000 in costs to the Henkels.

2.

The Blasis' first argument depends on their unsupported assumption that a good-faith finding necessitates an offset regardless of whether there are any joint tortfeasors.  They claim "[t]he law here is simple: Either there is a good faith settlement determination and an offset or there are no joint tortfeasors and there is therefore no good faith settlement determination or offset."  Yet they cite no authority for this position.

Under Code of Civil Procedure sections 877(a) and (b), "a release . . . given in good faith before verdict or judgment to *one or more of a number of tortfeasors claimed to be liable for the same tort* . . . shall reduce the claims *against the others* in the amount stipulated by the release" and "shall

18

discharge the party to whom it is given from all liability for any contribution to any other parties." (Italics added.) The offset thus solely applies to "the others," i.e., "tortfeasors claimed to be liable for the same tort." As a result, the plain language suggests three possibilities: (1) a good-faith settlement determination and joint tortfeasors, and thus an offset; (2) a good-faith settlement determination but no joint tortfeasors, and thus no offset; or (3) no good-faith settlement determination, and thus no offset.

So, the Blasis may seek an offset only if they are joint tortfeasors with the Association and Keystone. As the Henkels note, however, the Blasis took the position below that they, the Association, and Keystone were *not* joint tortfeasors. And in its order granting the motion, the court expressly found "[t]here are no joint tortfeasors in the action against whom contribution can be sought." That the Blasis' are not joint tortfeasors with the Association and Keystone is further supported by the operative pleadings. The Henkels' claims against the Association and Keystone largely concern those entities' enforcement of, or failures to enforce, certain governing document requirements. The Henkels also accuse the Association and Keystone of gross negligence on an issue unrelated to the trespass claims, failure to follow governing document procedural requirements, and failure to provide insurance as required by governing documents.

Notably, none of the causes of action alleges the Association or Keystone are "liable for the same tort[s]" asserted against the Blasis: trespass and trespass to timber. (§ 877.) Accordingly, because they are not joint tortfeasors with the Association and Keystone, the Blasis are not entitled to any offset based on the granting of the good-faith motion. This conclusion does not give the Henkels a windfall double recovery because the Association

19

and Keystone compensated them for a wrong separate from that committed by the Blasis.

Even had the Blasis been entitled to an offset, that would not have resulted in "a defense judgment for the Blasis" that would have precluded the Henkels from collecting prevailing party costs. As the Henkels argue, "'[n]et monetary recovery[ ]' . . . is but one of the grounds for determining that a party has prevailed." (Citing Code Civ. Proc., § 1032(a)(4).) We agree with the Henkels they were unquestionably the prevailing parties on the Blasis' cross-complaint, as the Blasis "d[id] not recover any relief against" the Henkels. (*Ibid.*) The trial court concluded the Henkels were the prevailing party for purposes of costs, and the Blasis have failed to show that finding was erroneous.

In sum, the Blasis have fallen short of their burden to show entitlement to an offset or that any offset would have made them the prevailing parties rather than the Henkels. Accordingly, we affirm the trial court's denial of the Blasis' motion to strike or tax costs. Given our decision, we need not decide the remaining issues raised by the parties, such as the availability of post-judgment motions for offset or post-judgment section 877.6 appeals.

III.

We affirm the judgment and the trial court's post-judgment orders denying the Henkels' motion for attorney fees and the Blasis' motion to strike or tax costs. The parties shall bear their own costs on appeal.


CASTILLO, J.

WE CONCUR:


McCONNELL, P. J.


DATO, J.

21