Filed 12/4/25  Malinowski v. Martin CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KAMILA MALINOWSKI,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>JUSTIN MARTIN,<br><br>        Defendant and Respondent. | A172705<br><br>(San Mateo County<br>Super. Ct. No. 21-FAM-01531) |

Kamila Malinowski filed a petition under the Domestic Violence Prevention Act (DVPA; Fam. Code, § 6200 et seq.)[1] to include her two children as protected parties under an existing domestic violence restraining order (DVRO) against the children's father, Justin Martin.  After a heavily litigated case, the trial court denied the petition, concluding Malinowski did not demonstrate that Martin committed domestic violence against the children.  Thereafter, the court granted Martin's request for $204,687.97 in attorney fees and costs pursuant to section 6344, which permits the court to award fees and costs to a prevailing respondent who shows by a preponderance of the evidence that the DVPA petition was frivolous or solely intended to abuse, intimidate, or cause unnecessary delay, and the court

---

[1]        Further unspecified statutory references are to this code.

determines that the petitioner has, or is reasonably likely to have, the ability to pay the award.  (§ 6344, subds. (b), (c).)

On appeal from the section 6344 award, Malinowski contends the trial court erred because (1) the action was not frivolous or brought in bad faith; (2) the court wrongfully gave res judicata effect to a prior family court order that did not involve any domestic violence claims under the DVPA; (3) the court ignored Malinowski's evidence of her inability to pay; and (4) the amount of the fee award was excessive and unsupported by competent billing records and attorney declarations.  We agree, in part, with the last contention and conclude the amount of the award attributable to legal services performed by one of Martin's attorneys was unsupported by competent evidence.  Accordingly, we will reverse the order and remand for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

This case has a complicated history in the lower court and several prior appeals in this court, including two published decisions:  *Malinowski v. Martin* (2023) 93 Cal.App.5th 681 (*Malinowski I*); *Malinowski v. Martin* (2024) 104 Cal.App.5th 559 (*Malinowski II*).  A detailed recitation of the underlying facts is set forth in *Malinowski I* and *II*.  The following background, adapted in part from those opinions, is limited to the facts relevant to this appeal.

Malinowski and Martin were married in September 2013 and have two children, I.M. and J.M.  In September 2018, Malinowski filed for dissolution of marriage (case No. 18-FAM-02115) (the dissolution action) and also petitioned for a domestic violence temporary restraining order (DVTRO) against Martin protecting herself, the children, and her parents (case No. 18-FAM-02115-A) (the first DVPA action).

2

In a separate case, in January 2019, Malinowski's parents obtained a three-year elder abuse restraining order against Martin.

**A. First DVPA Trial**

In October 2020, the trial court held a trial in the first DVPA action and issued a three-year DVRO protecting Malinowski from Martin. The court elected not to include Malinowski's parents or the children as protected parties because, as the court explained, the grandparents already had a restraining order, and the children were adequately protected in the "hands-on family law action currently pending."

**B. Family Court's March and July 2021 Hearings on Visitation**

In the dissolution action, the family court (Hon. Sean P. Dabel) conducted a hearing in March 2021 and heard testimony from supervised visitation provider Julie Espinoza. Judge Dabel elevated Martin's visitation status from supervised to unsupervised and ordered Espinoza's supervision of the exchanges of the children.

In July 2021, Judge Dabel held an evidentiary hearing on, among other matters, Martin's request for increased visitation hours and his claim that Malinowski was interfering with visitation. Espinoza testified regarding the children's refusal to go on visits. She also testified as to several events that would later become the subject of Malinowski's second DVPA action, including: (1) on June 14, 2021, Martin allegedly drove away from the exchange site with only J.M. and left I.M. alone in a parking lot; (2) Martin told J.M. that if he did not come on the visit to take care of his pet fish, Martin would flush the fish down the toilet; (3) on June 1, 2021, Martin allegedly told I.M. she could go to jail for six-year-olds for lying; and (4) instances in which the children waited in the car for hours and urinated on themselves during the exchanges. After the conclusion of testimony,

Judge Dabel announced his decision to increase Martin's visitation hours. Judge Dabel admonished Martin for threatening to flush J.M.'s fish. But he also expressed his "deep suspicion" that Malinowski was alienating the children from Martin, and he admonished her for telling the children that visitation should not go forward. On July 13, 2021, Judge Dabel issued a written order increasing Martin's visitation with the children to 15 hours per week, with exchanges to be supervised by Espinoza.

**C. Second DVPA Action**

Two months later, on September 14, 2021, Malinowski filed a petition in a new DVPA action (case No. 21-FAM-101531) (the second DVPA action) seeking a DVRO to protect herself and the children from Martin. In a supporting declaration, Malinowski alleged that Martin had committed the following nine instances of abuse against the children in 2021: (1) on April 3, the children returned from a visit reporting that Martin had pulled J.M. by the wrists and locked I.M. in another room; (2) on April 8, upon returning from a visit, I.M. reported that J.M. fell and sustained a concussion after Martin allowed J.M. to leave the residence unattended; (3) on May 13, the children returned from a visit reporting that Martin had punched J.M. in the chest at the front gate of Martin's property; (4) on May 17, upon returning from a visit, J.M. reported that Martin hit him in the shoulder and said " 'Fuck you, [J.M.]' "; (5) during an exchange on May 24, Martin threatened to kill J.M.'s fish if he did not agree to a visit; (6) during an exchange on June 1, Martin threatened to send I.M. to "jail for six-year-olds"; (7) on June 3, J.M. reported to school personnel that his father had punched him in the chest while yelling, " 'Fuck you, [J.M.]' "; (8) during an exchange on June 14, Martin took a crying J.M. and drove away, abandoning I.M. in the parking lot; and (9) on August 9, after an unsupervised visit, I.M. reported that

4

" 'Daddy tried to punch my head' " and " 'Daddy said he will make me dead.' "
(Italics omitted.)

## 1. DVTRO and *Malinowski I*

The trial court (Hon. Rachel Holt) immediately issued a DVTRO in the second DVPA action prohibiting Martin from all contact with the children, with no exceptions. (*Malinowski I*, *supra*, 93 Cal.App.5th at p. 686.) As a result, Martin's visitation with the children ceased for several months. (*Id.* at p. 687.)

After the second DVPA action was assigned for all purposes to Judge Dabel, Malinowski filed a successful peremptory challenge under Code of Civil Procedure section 170.6. (*Malinowski I*, *supra*, 93 Cal.App.5th at p. 687.) The matter was then reassigned several times until both the second DVPA action and the dissolution action were assigned to Judge Holt. (*Malinowski I*, at pp. 687–688.) In March 2022, Judge Holt explained that after having become fully acquainted with the case, including Judge Dabel's prior orders allowing Martin unsupervised visits and increasing his visitation hours, she would modify the DVTRO to include exceptions for brief and peaceful contact for court-ordered visitation. (*Malinowski I*, at p. 689.)

On appeal from the trial court's modification order, we concluded in *Malinowski I* that the court was not required to follow the procedures of Code of Civil Procedure section 533 in order to modify the DVTRO to allow for exceptions consistent with child visitation ordered in the parallel dissolution case. (*Malinowski I*, *supra*, 93 Cal.App.5th at p. 685.) In so concluding, we explained why the record in that case "illustrates perfectly why a DVTRO issued under expedited procedures may require flexibility and nimbleness for modifications as further information comes to light. Malinowski's DVRO application, though procedurally sufficient for purposes of obtaining an initial

5

DVTRO [citation], omitted reference to Judge Dabel's July 2021 visitation order, even as Malinowski sought to prohibit Martin from all contact with the children. . . . Malinowski's application was presented to Judge Holt in 'a flurry of ex partes,' which resulted in the quick issuance of a DVTRO that conflicted . . . with the extant rulings of the dissolution court." (*Id.* at p. 695.)

### 2. Second DVPA Trial and *Malinowski II*

The trial in the second DVPA action was held in October 2022. Both parties filed multiple motions in limine, including cross-motions regarding the admissibility of video footage of the supervised exchanges captured by a "dash cam" in the vehicle that Malinowski's father ("Grandfather") used to transport the children. The trial court granted Martin's motion to exclude the dash cam evidence.

Over the course of nine days, the trial court (Judge Holt) heard testimony from several witnesses including: Malinowski; the children's therapist, Valerie Houghton; the visitation exchange supervisor, Espinoza; Malinowski's private investigator; Grandfather; and Martin. After closing arguments, the court issued its oral ruling denying Malinowski's request to add the children as protected parties to the DVRO.

On Malinowski's request, the trial court issued a written statement of decision. The court found that Martin "did not commit the alleged acts of domestic violence or abuse against the minor children." In the statement of decision, Judge Holt made reference to the dissolution action, stating that "Judge Dabel, when he presided over the marital dissolution case of the parties, closely monitored the safety of the children in 2021. In March 2021, Judge Dabel conducted a hearing at which the same questions were posed to Julie Espinoza, the exchange supervisor, as were posed to her in the DVPA trial, and Judge Dabel found her to be a credible, neutral, and unbiased

6

witness. Based on Ms. Espinoza's testimony, Judge Dabel made changes to the visitation Orders—first removing the requirement that the children's visits with their father be supervised, and then expanding the number of hours of unsupervised visitation — after hearing the same allegations and testimony as were presented herein." Judge Holt wrote, "This Court also finds Ms. Espinoza to be a credible witness. Indeed, she represented the voice of sanity amidst all the chaos."

The statement of decision further reflected the trial court's findings that Dr. Houghton was not a reliable witness, as she "never spoke directly to either [Martin] or Ms. Espinoza." The court likewise found that Malinowski's "testimony regarding the children's reporting of abuse by their father and observed symptoms of such purported abuse was not supported by the evidence" because she "was not a personal witness to any of the alleged abuse perpetrated by [Martin] and thus, had no personal knowledge of any such abuse." Based on these remarks about the testimony given at trial, Judge Holt concluded, "The evidence, in toto, does not support any of the allegations of abuse of the children by [Martin]."

On appeal from the judgment, we held in *Malinowski II* that the trial court erred in excluding the dash cam evidence because the videos were not confidential communications within the meaning of the California Invasion of Privacy Act (Privacy Act; Pen. Code, § 630 et seq.).[2] However, we concluded the court's Privacy Act error was harmless because Malinowski failed to demonstrate a reasonable probability that admission of the dash cam footage would have led to the issuance of a DVRO protecting the children. We then

---

[2] We also elected to reach, then rejected, Malinowski's alternate contention that the dash cam recordings were permitted under statutory exceptions to the Privacy Act (Pen. Code, §§ 633.5 and 633.6). (*Malinowski II, supra*, 104 Cal.App.5th at pp. 573–575.)

7

rejected Malinowski's remaining claims of error. (*Malinowski II*, *supra*, 104 Cal.App.5th at pp. 563, 576.)

### D. Martin's Request for Section 6344 Attorney Fees and Costs

In January 2023, Martin filed a request for order ("RFO") awarding him attorney fees and costs as the prevailing respondent in the second DVPA action.

#### 1. Supporting Papers

Martin argued he was entitled to attorney fees and costs under section 6344 because Malinowski's second DVPA action was frivolous and solely intended to abuse, intimidate, and cause unnecessary delay. Specifically, Martin contended that Malinowski's motive in filing the second DVPA action was "to forum shop so that child custody and parenting issues would not be heard by Judge Dabel" and "to deny me my parental rights with our children which would deny our children to have a relationship with their father." Martin further argued that Malinowski had the ability to pay the award given her gross yearly income in excess of $400,000 and her share of the approximately $1.7 million equity in the marital residence.

In support, Martin submitted a declaration stating in relevant part that he had incurred $161,438.22 in attorney fees and costs from May 4, 2022 to November 30, 2022 with his then-current counsel, Seeley Family Law Practice, and that he anticipated incurring additional fees and costs on the fee motion. Martin attached redacted billing statements from his attorney Yvonne Seeley, which were heavily redacted to obscure the descriptions of the legal services performed. However, the billing statements contained specific information on the dates of services, the number of hours expended, and various hourly billing rates applied.

Martin further stated in his declaration that he had incurred $42,169.75 in legal services from his prior attorney, Paul Vorsatz, from the filing of the second DVPA action in September 2021 until March 2022. Martin attached copies of billing records from Vorsatz's firm and stated that he (Martin) "approve[d] these bills as reasonable and necessary."

Seeley also submitted a declaration in support of the fee motion, stating that as of November 30, 2022, Martin owed her firm $161,438.22 for legal fees "incurred in this Domestic Violence action." Seeley further stated that she "will amend this Declaration closer to trial to reflect fees and cost incurred since then." In her declaration, Seeley identified various individuals from her firm "who worked on this case, and their respective titles and billing rates," including herself at $600 an hour; a senior associate at $500 an hour; an of counsel attorney at $500 an hour; and four additional staff members at billing rates of $250 and $200 an hour.

## 2. Opposition, Reply, and Supplemental Papers

In May 2024, Malinowski and her then-counsel, Gary Dubcoff, each filed declarations opposing Martin's fee motion, arguing that Malinowski lacked the ability to pay, and that the second DVPA action was not frivolous or intended to cause unnecessary delay. In arguing Malinowski's inability to pay the requested fees, Dubcoff noted that Malinowski "owes *me* over $170,000, and, indeed, I am being forced to withdraw from the case because of her inability to pay my fees."

In June 2023, Seeley filed a reply declaration stating she had incurred an additional $1,080 in fees reviewing the opposition papers, increasing the total request for fees and costs to $204,687.97.

The matter was originally scheduled for a hearing in August 2023 but was continued pending the outcome of the appeal in *Malinowski II*. In the

9

meantime, Malinowski filed supplemental papers arguing that: (1) under the disentitlement doctrine, Martin was not entitled to his fees and costs due to his refusal to pay family-court-ordered fees and costs to Malinowski, as well as his failure during discovery to disclose evidence of his wealth; and (2) in November 2023, another trial court judge renewed the DVRO issued in the first DVPA action, while in July 2024, the family court in another action (18-FAM-02115-B) issued a DVRO protecting Malinowski and the children based on new allegations of domestic violence committed by Martin in or around June 2024.

### 3. Hearing and Decision

On November 20, 2024, the trial court (Judge Holt) held a hearing on Martin's request for DVPA-related attorney fees and costs under section 6344.

In late December 2024, the trial court issued its written order awarding Martin attorney fees and costs in the amount of $204,687.97. The court first highlighted that it was not ordering Malinowski to pay the award immediately and "directs that the current fee award be offset against any amounts that [Martin] otherwise owes to [Malinowski]" under two prior orders issued in April 2021 (for $117,508.30) and September 2023 (for $175,000).

In finding that Martin had met his burden to demonstrate a basis for relief under section 6344, the trial court highlighted the timing of Malinowski's filing. As the court explained, Malinowski filed the second DVPA petition in September 2021, just after the family court "had recently expanded visitation with [Martin], pursuant to a hearing on July 1, 2021. . . . [A]lthough the DVRO petition includes nine claims of abuse, all but one of those claims were based on information that had been available to

10

[Malinowski] ahead of the July 1, 2021 visitation hearing. Further, upon trial of these issues, the Court determined to deny all of the claims, and it also credited testimony from Ms. Espinoza that [Malinowski] and her father . . . had taken actions to disrupt the ongoing visitation orders. In light of this, as well as the other evidence considered in the trial, the Court concludes that [Malinowski's] petition was brought in bad faith, as an improper collateral attack on existing orders, and as a part of ongoing efforts to disrupt [Martin's] relationship with the children."

The trial court further found that Martin had adequately documented the requested attorney fees and costs and found that the amount of fees he incurred "was reasonable in light of the overall complexity of these proceedings." The court also observed that Malinowski's attorney appeared to indicate that Malinowski "incurred a comparable amount of fees while this issue was being litigated."

As to Malinowski's ability to pay, the trial court reiterated it was not immediately requiring Malinowski to pay the fees and costs because of outstanding amounts that Martin owed her. Additionally, the court commented that Malinowski's "most recent" income and expense declaration "documents considerable debt" but "also documents a high income." Accordingly, the court found no basis to deny or limit its award based on ability to pay.

### 4. Motions for Reconsideration and Disqualification, and Appeal

Mother filed a request for reconsideration arguing that: (1) the trial court "erroneously (and solely) relie[d] on the doctrine of res judicata or issue preclusion" based on Judge Dabel's July 1, 2021 visitation order in the family dissolution case, which was governed by a different legal standard than the DVPA and did not involve the adjudication of any allegations of domestic

11

violence; (2) the second DVPA case involved an additional allegation of abuse that occurred in August 2021, after the July 2021 family court hearing, which alone satisfied the DVPA's requirements for issuing a DVRO; (3) the court's award of $204,687.97 in fees and costs exceeded the amount sought by Martin in his RFO; (4) Seeley's supporting declaration was too heavily redacted to allow verification of the reasonableness of the services performed; and (5) Vorsatz's fees were not supported by an attorney declaration, and his fees were already fully satisfied by Malinowski's payment of $65,000 to him in November 2024. The court denied the motion, concluding there were no new facts, circumstances, or law that justified reconsideration of the section 6344 ruling.

In February 2025, Malinowski sought to disqualify Judge Holt under Code of Civil Procedure sections 170.1 and 170.3. Judge Holt struck the statement of disqualification.

Malinowski filed a timely notice of appeal from the trial court's December 2024 order granting Martin section 6344 fees and costs.[3]

## DISCUSSION

On appeal from an award of attorney fees, we review the determination of the legal basis for the award independently as a question of law (*Leamon v. Krajkiewcz* (2003) 107 Cal.App.4th 424, 431) and the amount of the award for abuse of discretion (*Loeffler v. Medina* (2009) 174 Cal.App.4th 1495, 1509

---

[3]     We previously deferred ruling on Malinowski request for judicial notice. We now grant the request, in part, as to the following:  (1) the records in *Malinowski I* and *II*; (2) the records of this court; (3) the Local Rules of the San Mateo County Superior Court; and (4) 13 documents filed in the various related trial court matters that were included in the record on appeal in this case.  (Evid. Code, §§ 452, subd. (e)(1), 459, subd. (a).)  The balance of the request is denied.

(*Loeffler*)).  Where the trial court resolves disputed factual questions, we review the court's factual findings for substantial evidence, resolving all conflicts in the evidence and questions of credibility in favor of the prevailing party, and indulging all reasonable inferences to support the trial court's order.  (*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 390.)

In this case, the statutory basis for the attorney fees and cost award was section 6344, which provides in relevant part that a trial court in a DVPA action may, upon request and after notice and hearing, "issue an order for the payment of attorney's fees and costs for a prevailing respondent only if the respondent establishes by a preponderance of the evidence that the petition or request is frivolous or solely intended to abuse, intimidate, or cause unnecessary delay."  (§ 6344, subd. (b).)

## A. Entitlement to Fees and Costs

Malinowski challenges the trial court's conclusion that Martin was entitled to section 6344 attorney fees and costs, arguing:  (1) the second DVPA action was not frivolous, (2) the court improperly gave res judicata effect to the family court's July 2021 visitation order; and (3) the court erroneously imposed an affirmative duty on her to pursue her DVPA allegations during the 2021 family court hearings even though those proceedings were limited to visitation and custody matters.  For the reasons below, we conclude Malinowski fails to demonstrate the court erred.

We begin by observing that the phrase "frivolous or solely intended to abuse, intimidate, or cause unnecessary delay" in section 6344, subdivision (b) ("6344(b)") mirrors somewhat the language used in Code of Civil Procedure section 128.5, which authorizes the award of reasonable expenses, including attorney fees, incurred by a party as a result of the other

13

party's "actions or tactics, made in bad faith, that are frivolous or solely intended to cause unnecessary delay." (Code Civ. Proc., § 128.5, subd. (a).) "[A] term having a specific meaning in one area of the law should be construed similarly elsewhere," unless the legislative policies "reveal a distinct legislative intent behind each respective statutory scheme." (*Britts v. Superior Court* (2006) 145 Cal.App.4th 1112, 1127.) Here, the statutes espouse similar intentions of compensating a party for fees and costs incurred as a result of another party's frivolous or improperly motivated litigation conduct. Accordingly, we may construe their terms similarly.

On this score, "frivolous" means " 'totally and completely without merit or for the sole purpose of harassing an opposing party.' [Citation.] To meet this standard, a party requesting the award must show that 'any reasonable attorney would agree the motion was totally devoid of merit.' " (*Gerbosi v. Gaims, Weil, West & Epstein, LLP* (2011) 193 Cal.App.4th 435, 450.) This is an objective standard, while the question whether an action was prosecuted solely with the intent to cause unnecessary delay is a subjective determination. (See *Chitsazzadeh v. Kramer & Kaslow* (2011) 199 Cal.App.4th 676, 683–684.) Here, the trial court did not make a finding that the second DVPA action was frivolous within the meaning of section 6344. But no matter. Because the statutory grounds under section 6344(b) are written in the disjunctive—e.g., "frivolous *or* solely intended to abuse, intimidate, *or* cause unnecessary delay" (§ 6344(b), italics added), each ground may independently support a section 6344 award. As such, even if we accepted for the sake of argument that the second DVPA was arguably meritorious, that " 'is not conclusive proof that the action was not brought solely to harass or delay,' " and Martin could still prove that " 'the arguably

14

meritorious action was taken for improper motives.' " (*Bach v. McNelis* (1989) 207 Cal.App.3d 852, 876.)

What the trial court did find is that Malinowski brought the second DVPA action in September 2021 to effectively circumvent the family court orders issued in March and July 2021 that significantly expanded Martin's visitation with the children. Substantial evidence supports that determination. First, there were substantial similarities between the allegations of Martin's conduct during exchanges and visits asserted in the second DVPA petition and the allegations that had already been explored in the family court proceedings. Second, Malinowski filed the second DVPA action shortly after the family court decided, over her opposition, to expand Martin's visitation with the children. Because the prior DVRO from the first DVPA action remained in effect, the trial court could reasonably conclude that Malinowski should have sought to amend the existing DVRO rather than bring a new DVPA action. Third, the second DVPA trial included evidence of Malinowski's other efforts to thwart Martin's visitation with the children by encouraging the children to misbehave during the exchanges. On this record, the court could reasonably conclude that Malinowski was improperly motivated to bring the second DVPA action as yet another attempt to obstruct or otherwise cause unnecessary delay in Martin's court-ordered visitation.

Malinowski insists the trial court erroneously imposed an affirmative duty on her to bring her DVRO claims in the parallel family court proceedings, even though those proceedings were limited to dissolution and visitation matters. But nothing in the section 6344 order supports her claim; rather, the court explicitly based its decision on the timing of Malinowski's

15

DVPA action and her prior attempts to undermine Martin's visitation with the children.

Nor do we accept Malinowski's claim that she was prevented from raising child abuse allegations in the family court. Malinowski selectively quotes Judge Dabel as stating at the July 2021 hearing that the child abuse allegations were "not before me," but she fails to provide both his full remarks and the context for the statement. The reporter's transcript of the hearing reveals that after Malinowski's counsel told Judge Dabel there were "[child protective services] reports out right now," he replied, "That's not before me, *unless there's a witness here to discuss that*." (Italics added.) So prompted, Malinowski's counsel immediately began questioning exchange supervisor Espinoza regarding the June 2021 incident in which I.M. was purportedly left alone in the parking lot during an exchange, and Espinoza provide detailed testimony on this matter. The other allegations of abuse, including Martin's alleged threats regarding J.M.'s fish and I.M. going to "six-year-old jail," were also explored during the July 2021 hearing.

Malinowski's contention that the trial court misapplied the doctrine of res judicata fares no better. The term "res judicata" is "an umbrella term encompassing both claim preclusion and issue preclusion." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 823.) Claim preclusion "acts to bar claims that were, or should have been, advanced in a previous suit involving the same parties," while issue preclusion (or collateral estoppel) "describes the bar on relitigating issues that were argued and decided in the first suit." (*Id.* at p. 824.) For our purposes, the linchpin of res judicata is its *preclusive* effect; it " 'prevents relitigation" of causes of action or issues in subsequent suits. (*Cal Sierra Development, Inc. v. George Reed, Inc.* (2017) 14 Cal.App.5th 663, 671.) This bar on relitigation may be achieved by raising

the res judicata defense in a demurrer (*Boyd v. Freeman* (2017) 18 Cal.App.5th 847, 855), a summary judgment motion (*Ayala v. Dawson* (2017) 13 Cal.App.5th 1319, 1325), or other pretrial motion (see, e.g., *In re Marriage of Brubaker & Strum* (2021) 73 Cal.App.5th 525, 532 (*Brubaker*) [in limine motion].)

Here, the trial court never barred relitigation of any claims or issues based on the prior family court proceedings. There were no pretrial motions at the second DVPA trial seeking to bar Malinowski from relitigating matters addressed by the family court in July 2021. (Cf. *Brubaker*, *supra*, 73 Cal.App.5th at p. 532 [collateral estoppel defense raised by motion in limine].) True, the court remarked in its statement of decision that "the same questions" posed to Espinoza in the family court proceedings were also "posed to her in the DVPA trial." However, the court immediately stated that it "*also* finds Ms. Espinoza to be a credible witness." (Italics added.) That the court made its own findings *consistent with* the family court was not tantamount to barring Malinowski from relitigating those matters. Indeed, the court's admission of Espinoza's live testimony on the same matters at both the family court proceedings in July 2021 and the second DVPA trial in October 2022 demonstrates that Malinowski was not barred from relitigating the same abuse allegations. In reexamining such allegations at the DVPA trial, Judge Holt evidently formed her own view of the testimony and evidence in concluding there was no domestic violence within the meaning of the DVPA.

Finally, Malinowski raises various arguments as to why she could not have brought the second DVPA action earlier. Specifically, she claims that at the time of the family court hearing in July 2021, the DVRO was "not ripe for application nor adjudication" because (1) one of the allegations of abuse had

17

not yet occurred; (2) Malinowski had not yet reviewed all of the dash cam footage; and (3) she had not yet received visitation reports or deposition testimony and child welfare services reports from the children's therapist, which became available in September 2021.  Critically, Malinowski fails to support any of these assertions with citations to the record.  (See *Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 738 (*Schmidlin*) [appellant has duty to refer to portions of record supporting contentions on appeal]; *People v. Hyatt* (1971) 18 Cal.App.3d 618, 624 (*Hyatt*) [where brief fails to specify portions of record supporting factual assertions, record is presumed to support trial court's rulings].)  In any event, these arguments essentially challenge the trial court's finding that the "timing" of Malinowski's second DVPA action supported an inference of her improper motive.  But in reviewing the court's factual findings for substantial evidence, our role is to determine whether there is evidence supporting the court's findings, and we disregard evidence that could support a contrary finding.  (*Harley-Davidson, Inc. v. Franchise Tax Bd.* (2015) 237 Cal.App.4th 193, 213.)

In sum, we conclude Malinowski fails to demonstrate the trial court erred in finding Martin's entitlement to section 6344 fees and costs.

**B. Ability to Pay**

Section 6344, subdivision (c), provides that "[b]efore a court awards attorney's fees and costs pursuant to this section, the court shall first determine pursuant to Section 270 that the party ordered to pay has, or is reasonably likely to have, the ability to pay."  Section 271 additionally requires the trial court to "take into consideration all evidence concerning the parties' incomes, assets, and liabilities," and prohibits the court from making an award "that imposes an unreasonable financial burden on the party against whom the sanction is imposed."  (§ 271, subd. (a).)

18

We conclude substantial evidence supports the trial court's finding that Malinowski had or was reasonably likely to have the ability to pay the section 6344 award. As the court emphasized, Malinowski was not being ordered to make immediate payment, and the award would merely offset the outstanding attorney fees that Martin owed to her. The court also cited Malinowski's "most recent" income and expense declaration, dated February 6, 2024, and found that while Malinowski had "considerable debt, she also documents a high income." From this, the court could reasonably conclude the section 6344 award would not impose an unreasonable financial burden on Malinowski.

Citing a local rule of the San Mateo County Superior Court requiring the use of "current" income and expense declarations whenever a financial matter is at issue in the family court, Malinowski insists the February 2024 declaration was obsolete because it was nine months old at the time of the section 6344 hearing. However, Malinowski does not dispute the court's finding that the February 2024 declaration was the "most recent" evidence of her financial condition at the time of the section 6344 hearing. Nor does she demonstrate the existence of any material change in circumstances between the February 2024 declaration and the court's ability-to-pay determination. Although Malinowski vaguely claims that her "financial situation has deteriorated since her February 6, 2024 filing" and that "[t]he value of her home, or any property she holds, is uncertain and insufficient to justify a $204,000 penalty," she fails to support these assertions with citations to evidence in the record. (*Schmidlin*, *supra*, 157 Cal.App.4th at p. 738; *Hyatt*, *supra*, 18 Cal.App.3d at p. 624.)

Malinowski next argues her inability to pay was conclusively demonstrated by the April 2023 decision of a family court judge to grant her a

19

fee waiver. In support, she cites two Judicial Council form FW-008 orders from April 2023 in which the family court checked boxes on the form indicating as follows: "The court **denies** your request and **will not waive or reduce** your fees and costs." We fail to comprehend how these orders support her claim of error here.

Finally, Malinowski argues the trial court erred by basing its ability-to-pay determination on "speculative offsets" rather than her present ability to pay. We are not persuaded. The offsets the court referenced were for certain sums that Martin was previously ordered to pay Malinowski. We acknowledge the court's observation that "it recently dismissed a set of [orders to show cause] for nonpayment of those prior awards, based on its determination that [Malinowski] can seek collection of those amounts upon the characterization and division of assets, which are issues that are currently set for a trial beginning in June 9, 2025." However, this does not suggest the amounts that Martin owes to Malinowski are in any way hypothetical or speculative. Indeed, the court identified the dates and case numbers for the orders awarding specific sums ($117,508.30 and $175,000) to Malinowski. That the final division of marital assets remained to be determined at the time of the section 6344 hearing does not demonstrate that the amounts Martin owed to Malinowski were so speculative that the court could not consider them in determining whether Malinowski had the ability to pay the section 6344 award.

For the foregoing reasons, we conclude the trial court did not err in its ability-to-pay finding.

## C. Amount of Fees and Costs

We review the amount of a section 6344 fee award for abuse of discretion. (*Loeffler*, *supra*, 174 Cal.App.4th at p. 1509.) " '[A]n experienced

20

trial judge is in a much better position than an appellate court to assess the value of the legal services rendered in his or her court, and the amount of a fee awarded by such a judge will therefore not be set aside on appeal absent a showing that it is manifestly excessive in the circumstances.' [Citation.] 'The only proper basis of reversal of the amount of an attorney fees award is if the amount awarded is so large or small that it shocks the conscience and suggests that passion and prejudice influenced the determination.' " (*Ibid.*)

That said, " '[a]ll exercises of discretion must be guided by applicable legal principles. . . . [Citations.] If the court's decision is influenced by an erroneous understanding of applicable law or reflects an unawareness of the full scope of its discretion, the court has not properly exercised its discretion under the law. [Citation.] Therefore, a discretionary order based on an application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion and is subject to reversal.' " (*David v. Hernandez* (2014) 226 Cal.App.4th 578, 592 (*David*).)

"A trial court may not rubberstamp a request for attorney fees, but must determine the number of hours reasonably expended." (*Concepcion v. Amscan Holdings, Inc.* (2014) 223 Cal.App.4th 1309, 1325 (*Concepcion*) (italics omitted).) Generally, a trial court assessing attorney fees begins with the "lodestar," i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.) The lodestar may then be adjusted by the court based on various factors, including the novelty and difficulty of the questions involved and the attorney's skill in presenting them. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132 (*Ketchum*).) The moving party has the burden of proving the reasonable number of hours devoted to the litigation, "whether through

21

declarations or redacted or unredacted timesheets or billing records." (*Concepcion*, at p. 1325.)

Malinowski raises a number of challenges to the amount of the section 6344 award, most of which we reject. In contending the award of $204,687.97 was "legally unsound" because it exceeded the amount of fees that Martin requested in his *initial* RFO ($203,607.97), Malinowski neglects to acknowledge that the initial requested amount reflected fees incurred through November 30, 2022, and that Martin and Seeley expressly indicated their intent to file supplemental papers for fees incurred after that date. Seeley later submitted a reply declaration substantiating $1,080 in additional fees incurred, bringing the total to $204,687.97—the precise amount awarded by the court. Simply put, the court did not award more than was requested.[4]

We also reject Malinowski's challenge to the amount of the award based on her claim of trial court bias. In support of this claim, Malinowski submits that in early December 2024 (shortly after the hearing on the section 6344 motion but before the court issued its written decision), Judge Holt and Seeley both attended the San Mateo County Bar Association's Family Law Section Annual Holiday Lunch, and that Seeley's firm was among several "Preferred Annual Supporters" of the bar association. Incidentally, this was the basis of Malinowski's February 2025 motion to disqualify Judge Holt. Malinowski, however, did not seek mandamus relief from the order striking her disqualification motion (see § 170.3, subd. (d)), nor does she present in

---

[4] Moreover, the mere fact that the trial court awarded more than was documented in attorney billing statements and declarations does not render an award erroneous as a matter of law. As discussed, the court may, within the reasonable exercise of its discretion, adjust the lodestar amount to increase the total award based on factors such as the difficulty of the case. (*Ketchum*, *supra*, 24 Cal.4th at p. 1132.)

this appeal any specific argument and authority supporting a due process ground of relief for judicial bias (see *People v. Brown* (1993) 6 Cal.4th 322, 334).  In any event, the due process clause "sets an exceptionally stringent standard" for proving judicial bias.  (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 589.)  "It is 'extraordinary' for an appellate court to find judicial bias amounting to a due process violation.' " (*Ibid.*)  Malinowski has not met that high bar here.  (See *People v. Carter* (2005) 36 Cal.4th 1114, [judge's professional association and casual social contact with prosecutor did not require recusal].)

We now turn to Malinowski's challenge to the evidentiary foundation for the amount of the section 6344 award.  She contends Martin failed to submit adequate support for section 6344 fees because the Seeley billing records were so heavily redacted that they were "completely illegible and impossible to scrutinize for reasonableness or necessity."  This is insufficient to demonstrate the trial court's abuse of discretion, as attorney fees may be awarded in the absence of detailed time sheets.  (See, e.g., *Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 255; *Weber v. Langholz* (1995) 39 Cal.App.4th 1578, 1587 (*Weber*); *Sommers v. Erb* (1992) 2 Cal.App.4th 1644, 1651.)  As the courts have held, " '[a]n attorney's testimony as to the number of hours worked is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records.' " (*Rancho Mirage Country Club Homeowners Assn. v. Hazelbaker* (2016) 2 Cal.App.5th 252, 263–264 (*Rancho Mirage*); see *Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691, 698 (*Syers*) [" 'California courts do not require detailed time records, and trial courts have discretion to award fees based on declarations of counsel describing the work they have done and the court's own view of the number of hours reasonably spent' "].)

23

Here, Seeley's supporting declaration provided substantial evidence to support the amount of the section 6344 award attributable to her services. Seeley explained that Martin incurred $161,438.22 in legal fees and costs "in the Domestic Violence action with my firm," and she cited the trial court's online "Odessey portal reflect[ing] how active the domestic violence case has been. There are 27 pages on Odessey for the within action. This alone demonstrates how active, time consuming and costly this case has been." Seeley further described the case as involving "motions to disqualify numerous judges in San Mateo County Superior Court, Review hearings, [Malinowski's] Emergency *Ex Parte* in September 2022 to continue the October 11, 2022 trial, and an eleven-day trial (half days)." The Seeley billing records, though heavily redacted, contained specific information on the dates of services, the amounts of hours expended, and the various hourly billing rates applied. Together with Seeley's sworn statements regarding the services performed, the evidence was sufficient to support the award of attorney fees, even in the absence of unredacted time records that detailed the work. (*Rancho Mirage*, *supra*, 2 Cal.App.5th at pp. 263–264.)

In addition to the Seeley declaration, the trial court could rely on its " 'own view of the number of hours reasonably spent' " by the Seeley firm in this case. (*Syers*, *supra*, 226 Cal.App.4th at p. 698.) The record reflects that Judge Holt presided over the second DVPA action from its inception in September 2021 through the trial in October 2022 and the posttrial proceedings in 2025. From this vantage point, Judge Holt saw firsthand the heavily litigated nature and complexity of the proceedings—a point she specifically made in her fee ruling. On this record, we conclude Judge Holt was well positioned to assess the value of the legal services rendered by the

24

Seeley firm and to render a reasonable fee award in light of the circumstances.

Malinowski insists the Seeley billing records were "patently defective" because the entries on one date (October 6, 2022) contained more billable hours (34.3) than hours in a day. She further complains that the invoices totaled $159,142.72, short of the $161,438.22 claimed by Seeley in her declaration. We are not persuaded that Malinowski has demonstrated a manifest abuse of discretion by the trial court. With regard to the October 6, 2022 entry, the Seeley billing records reflect that the 34.3-hour total included the aggregate hours of several individuals at the Seeley firm working at various billing rates on that date. Although Malinowski points out there was no hearing on October 6, 2022, the trial was set to begin only a few days later. The court could reasonably conclude the high number of hours reflected necessary preparation for the impending trial.

With regard to the purported discrepancy in totals between the Seeley billing records and the Seeley declaration, we again reiterate that the trial court was permitted to "make its own evaluation of the reasonable worth of the work done in light of the nature of the case, and of the credibility of counsel's declaration unsubstantiated by time records and billing statements." (*Weber, supra,* 39 Cal.App.4th at p. 1587.) Notably, Malinowski presented this same calculation error argument in her reconsideration motion, which the court denied, suggesting the court did not base the award on the precise total reflected in the billing records. Moreover, the court could have permissibly concluded the higher amount stated in Seeley's declaration was justified as an adjustment to the lodestar based on the difficulty of the case. (*Ketchum, supra,* 24 Cal.4th at p. 1132.)

25

We reach a different conclusion for the portion of the section 6344 award attributable to Vorsatz. Like Seeley's billing records, the Vorsatz billing records were heavily redacted to preclude review of the services rendered. But unlike Seeley, Vorsatz submitted no declaration describing the work he had performed, the hours expended, and the billing rates applied. While Martin confirmed in his declaration that he owed Vorsatz $42,169.75 in total fees and "approve[d] these bills as reasonable and necessary," this was not a substitute for counsel's own sworn statement. (See *Rancho Mirage*, *supra*, 2 Cal.App.5th at pp. 263–264 ["attorney's testimony" is sufficient evidence to support fee award absent detailed time records]; *Syers*, *supra*, 226 Cal.App.4th at p. 698 [discretion to award fees based on " 'declarations of counsel' "].)

Further complicating matters is the appearance in the record that the $42,169.75 total included Vorsatz's fees incurred in both the dissolution action and the second DVPA action, with no basis for apportioning fees as between the two. As Martin explained in his declaration, "From the date of filing of the DV action in September 2021 until March 2022, Mr. Vorsatz represented me in the within DV action and the dissolution of marriage action. Mr. Vorsatz's billings reflect legal services *for both actions*." (Italics added.)[5] Martin then turned to those "billing invoices from September 2021 to March 2022" and explained that the "entries for *that time frame* totals $42,169.75." (Italics added.) In other words, Martin's declaration seems to confirm that the entire $42,169.75 portion of the section 6344 award attributable to Vorsatz included compensation for his legal services in both

---

[5]     Seeley likewise represented Martin in both actions but made clear in her declaration that her request for $161,438.22 in fees and costs were incurred "in the Domestic Violence action with my firm."

26

the dissolution action and second DVPA action.  However, Martin presented no basis showing his entitlement to section 6344 fees for Vorsatz's services in the parallel dissolution action.  On this record, we conclude the trial court lacked an evidentiary basis to determine the amount of fees attributable to Vorsatz in connection with just the second DVPA action.  To the extent the court believed the declarations of Martin and Seeley and the heavily redacted Vorsatz billing records provided a sufficient evidentiary foundation for determining and awarding section 6344 fees limited to Vorsatz's services in the second DVPA action, we conclude this was an erroneous legal assumption that subjects the order to reversal.  (*David*, *supra*, 226 Cal.App.4th at p. 592.)[6]

We acknowledge decisional authority that "[a]n award for attorney fees may be made in some instances solely on the basis of the experience and knowledge of the trial judge without the need to consider any evidence." (*Fed-Mart Corp. v. Pell Enterprises, Inc.* (1980) 111 Cal.App.3d 215, 227 (*Fed-Mart*).)  But even in *Fed-Mart*, the trial court had records that, while not separately listing the time spent on compensable matters, "did identify for each segment of time listed, the action taken by the attorney during that particular time period." (*Id.* at p. 223.)  Additionally, counsel "testified in detail" as to the services rendered. (*Ibid*.)  The trial court here had no comparable evidence regarding Vorsatz's time and services, let alone

---

[6]     We are unable to discern from the record why the Vorsatz billing records were redacted. (*People v. Kelly* (2020) 59 Cal.App.5th 1172, 1186 [not all information in billings invoices is " 'categorically privileged' "].)  To the extent Martin is permitted on remand to make a foundational showing that the unredacted Vorsatz billing entries would reveal privileged or attorney-work product information, the trial court may review the unredacted records in camera. (*Coito v. Superior Court* (2012) 54 Cal.4th 480, 502.)

sufficient information to apportion the fees between the dissolution action and the second DVPA action.

*East West Bank v. Rio School Dist.* (2015) 235 Cal.App.4th 742 presents a different approach for determining a reasonable fee award within the trial court's discretion. There, despite the absence of "itemized time records, estimates of time spent on discrete tasks, billings submitted to the client or records of payments made for work done," the trial court "undertook its own analysis of the evidence and the record" and estimated a reasonable lodestar, with a 10 percent multiplier based on relevant factors. (*Id.* at p. 750.) Citing *Fed-Mart*, the Court of Appeal concluded the trial court did not abuse its discretion in making "its own determination of fees based on its analysis and the record." (*Ibid.*) Here, in contrast, there is no indication the trial court made an independent determination of fees based on its own analysis of the record. In granting the precise amount of fees requested by Martin, it appears the court simply accepted the amount of Vorsatz's fees set forth in the Martin and Seeley declarations. For the reasons discussed, this was error. (*Concepcion*, *supra*, 223 Cal.App.4th at p.1325 ["trial court may not rubberstamp a request for attorney fees, but must determine the number of hours reasonably expended"].)

In light of the foregoing, we will reverse the trial court's order awarding section 6344 fees and costs and remand with instructions to redetermine the amount of reasonable attorney fees and costs attributable to Vorsatz's compensable legal services.[7] In all other respects, we affirm the court's order.

---

[7] We offer a few additional observations. Some of the unredacted portions of the Vorsatz billing records identify services such as "Review of 113 page custody evaluation; preparation of notes"; "Response to various client emails re: Parenting Coach"; and "email to Dubcoff regarding order and visitation." On first glance, these entries seem to reflect services performed

28

## DISPOSITION

The trial court's order awarding Martin attorney fees and costs under section 6344 is reversed, and the matter is remanded for redetermination of the amount of reasonable attorney fees and costs attributable to Vorsatz's compensable legal services. In the interests of justice, each side shall bear its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

_____
Fujisaki, Acting P. J.

WE CONCUR:

_____
Petrou, J.

_____
Rodríguez, J.

*Malinowski v. Martin* (A172705)

---

in connection with the martial dissolution action rather than the second DVPA action. That said, we acknowledge that the services could potentially apply to both proceedings, and furthermore, in cases where attorney fees are compensable for some services and noncompensable for others, the trial court is not required to apportion fees if the issues are so intertwined that it would be impracticable to separate the attorney's time into compensable and noncompensable units. (See *Bell v. Vista Unified School Dist.* (2000) 82 Cal.App.4th 672, 687.) But on the record before us, we simply cannot ascertain whether these principles would permit Martin to recover the entirety of Vorsatz's fees between the dissolution action and the second DVPA action.

Furthermore, in light of our conclusion above, we need not resolve Malinowski's additional contention that she already paid Vorsatz $65,000 in full satisfaction of all legal fees she owed to him across all actions, including the second DVPA action. We leave it to the trial court to consider this and any other matters it deems relevant and appropriate on remand.

29